(No. 13393.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWARD MACIEJEWSKI *et al.* Plaintiffs in Error.

*Opinion filed October 23, 1920.*

1. CRIMINAL LAW—*admissibility and weight of evidence of identification.* Testimony of the complaining witness tending to identify the defendant is competent and admissible even though not positive, but the weight of such evidence is for the jury in connection with the other circumstances of the case.

2. SAME—*defendant may be convicted on the testimony of one prosecuting witness.* The fact that only one witness testifies for the State as against the testimony of the defendant is no reason for reversing a judgment of conviction if the jury believe the prosecuting witness.

3. SAME—*when revolvers found by officers are admissible in evidence.* Where the evidence shows that the complaining witness was robbed by men armed with revolvers and the witness identifies one of the defendants on trial, two revolvers found by the police officers who arrested three of the defendants at the home

of one of them are admissible in evidence, where one of the defendants, in the presence of the other two, admitted that he owned one of the revolvers, and that he, with three other men, had committed a robbery.

4. SAME—*what instruction as to credibility of defendant's testimony is proper.* An instruction as to the right of a defendant to testify in his own behalf and as to his credibility may properly state that "the jury have a right to take into consideration the fact that he is interested in the result of the prosecution as well as his demeanor and conduct upon the witness stand."

5. SAME—*State is not responsible for evidence brought out on examination by. attorney for defendant.* The State is not responsible for questions asked by the attorney for the defendant, and a judgment of conviction will not be reversed for incompetent evidence brought out by defendant's cross-examination of police officers, where such evidence is stricken and the jury are instructed to disregard it.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding.

MCDONNELL & MCDONNELL, J. AMBROSE GEARON, JOSEPH A. SULLIVAN, and LAZAR H. GLADSTONE, for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and GEORGE C. DIXON, (EDWARD E. WILSON, and ROBERT W. DANIELS, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiffs in error, Edward Maciejewski, John Koch, Matt Yost and Charles Pavlowski, were found guilty by a jury at the February term of the criminal court of Cook county and a judgment was entered on the verdict as. to all of them. This writ of error is sued out to reverse that judgment.

. The testimony on behalf of the People was to the effect that about 11 o'clock A. M. on September 24, 1919, Arthur C. E. Schmidt, employed as a clerk by J. V. Zim-

mer & Co., brokers, 5107 South Ashland avenue, Chicago, was robbed by several men who entered the brokerage office while he was there alone. He testified that at first two men walked into the office and asked him if he purchased Liberty bonds; that both men had revolvers and told him to throw up his hands; that almost immediately a third man came in; that he thought this third man was a customer and was going to call to him for help; that he backed up to the counter and went into the washroom in the rear of the office, the third man following him with a revolver; that this robber told him to turn his face to the wall, felt in his pockets and took out his watch, which was worth $30; that the robbers then asked for the keys to the cash drawer, but did not wait for them but took some sort of an instrument and opened the cash drawer, taking therefrom $458.70 and seven $50 Liberty bonds; that they ordered him to remain where he was for five minutes, apparently so they could escape. It appears, also, that there was a fourth man, who remained in an auto outside while these three men were in the office, and that when they departed they entered this auto and drove rapidly away.

Police officers Hartigan, McCarthy and Callahan testified that they arrested the plaintiffs in error Pavlowski, Yost and Koch on the evening of October 5, 1919, and Maciejewski on the evening of the 7th. They also testified that when they arrested Pavlowski at his home they found two revolvers under a mattress there. Officer Hartigan testified that he assisted in arresting all the plaintiffs in error; that he had a talk with Yost, Koch and Pavlowski when all three were present, the evidence being confined, by an order of court, to these three and was not admitted against Maciejewski; that the witness made no threats and offered no inducements to any of them before they made their statements; that Pavlowski said in the presence of Yost and Koch that another fellow, whom they called "Bum," went with them up to Fifty-first street and held

up a real estate office and that Koch waited outside with
a car, and when Yost should scratch his hand (apparently
meaning clap his hands) Koch was to come up to the place;
that when Koch drove up the three came out and got into
the car and went south on Ashland avenue; that Koch
went by the name of Brooks and Pavlowski by the name
of Peterson; that they went somewhere and divided among
themselves the money and bonds they had obtained from
this real estate office; that Pavlowski said he owned one
of the revolvers and Koch owned the other. The testimony
of officer McCarthy was substantially to the same effect
as the statements of Pavlowski and Koch. The testimony
of both of these officers is also to the effect that no con-
tradiction was made by either Yost or Koch of the state-
ments of Pavlowski at this interview. It appears also from
the testimony of the officers that some of the plaintiffs in
error at this interview stated that Yost later sold three of
the $50 Liberty bonds to Peter Stefan. Stefan was called
as a witness for the State and testified that Yost had prior
to the trial sold him three Liberty bonds. Officer Callahan
testified practically to the same effect as did officers Harti-
gan and McCarthy, although he further testified that Koch
said during a conversation that he did not know whether
the fourth man, called "Bum," was Maciejewski or not;
that Pavlowski said he was the man, and Yost agreed that
Maciejewski was there with them.

All the plaintiffs in error took the stand and testified in
their own behalf, all stating that they had been abused and
treated with physical violence by the police in the various
police stations where they were held before the trial. They
denied that they made any admission as to their taking part
in this robbery and testified they had nothing to do in any
way with it. The officers all testified that they did not
strike any one of the plaintiffs in error during their inter-
views or make threats or promises to them, and there is
no evidence in the record that tends to corroborate plain-

tiffs in error as to their being threatened or treated with physical violence. If the testimony of plaintiffs in error, or any part of it, is true as to their treatment by the police officers, such treatment would deserve the severest criticism and condemnation and should cause any evidence of admissions obtained by such means to be excluded from the hearing of the jury. The question of these admissions and how obtained was submitted by instructions to the jury, and evidently they must have believed that the statements were freely and voluntarily made by the plaintiffs in error. The jury and the trial court having seen and heard the witnesses testify were in much better position to decide as to the truth or falsity of the testimony of the various witnesses in this regard than the members of this court, who can only read the evidence from the record. There can be no question that it would be the duty not only of the trial judge but of this court to set aside a verdict based on any evidence of admissions obtained by such means, as argued by counsel for plaintiffs in error, and grant a new trial. We cannot say from this record that the conclusions of the jury and the trial judge were wrong in regard to the manner in which these statements or admissions were made.

The evidence on behalf of plaintiffs in error was that they were not at the brokerage office at the time of the robbery. As already stated, all of the plaintiffs in error testified to that effect. A sister of Pavlowski testified that on September 24 Pavlowski was fixing the porch at their home; that she remembered the date because it was a week after her father's birthday; that the revolvers in question had been left at their house by a roomer four years before and did not belong to her brother. Mrs. Julia Brooks testified on behalf of Koch, stating that she remembered seeing him on September 24; that she remembered the day because it was Wednesday and she did her ironing on Tuesday. Yost denied any acquaintance with Pavlowski or Maciejewski but admitted selling Stefan some bonds,

but said he bought them from Swift & Co. and the Ham-mond Company. Yost had no witnesses corroborating his story that he was not present at the robbery; neither did Maciejewski, although he testified that he was working all that day from 6:30 in the morning until 5:30 in the afternoon, driving a feed wagon, and had been at that job for the three weeks previous. He also testified that he was not acquainted with any of the plaintiffs in error except a speaking acquaintance with Pavlowski, as his mother was a tenant on Pavlowski's mother's property.

The complaining witness, Schmidt, was unable to positively identify any of the plaintiffs in error. He testified that some twelve days after the robbery the police sent for him to come to the police station, saying that they "had someone that did it," and that plaintiff in error Yost was the only one of the three that he recognized on that day. He was asked at a preliminary hearing of this case if he could identify any of the plaintiffs in error and answered that he could not. On the trial of the case in the criminal court he testified that he recognized Yost and also Maciejewski, stating that Maciejewski was the man who held him up in the washroom.

Counsel for plaintiffs in error strongly argue that the evidence does not justify the conviction as to any of the plaintiffs in error, particularly Maciejewski; that there is no evidence as to the last named connecting him with the robbery except the identification by Schmidt, and that this identification was so doubtful that the conviction ought not to be sustained. There can be no question that, even though his testimony was not positive as to the identification, it was competent and admissible, its weight being a question for the jury in connection with the other circumstances in the case. (*People* v. *Jennings*, 252 Ill. 534, and cases cited.) The question of identifying an alleged criminal and the nature of such testimony is discussed in this last case, and we refer to the reasoning in that case

and the authorities there cited as to the admissibility and weight of such testimony. This court has said that the fact that only one witness testifies for the State as against the testimony of the defendant is no reason for reversing the case if the jury believe the prosecuting witness. (*People* v. *Zurek,* 277 Ill. 621; *People* v. *Schoop,* 288 id. 44.) In this last case this court quoted with approval the doctrine in *Gainey* v. *People,* 97 Ill. 270, where we said: "The most important and useful function which the jury is required to perform is to determine on which side of a controversy the real truth lies where the testimony as to the material facts is directly in conflict and irreconcilable, and its conclusion in such case, of necessity, depends largely upon the credit to be given to the opposing witnesses; hence it is universally admitted to be the peculiar province of the jury to determine the credibility of the witnesses." That reasoning applies with much force in this case, peculiarly with reference to the question of the guilt of Maciejewski. In cases of robbery with a revolver the opportunities for identification are, as a rule, very meager and so brief that a mistake is possible, "and yet the lives and safety of people would not be secure unless we acted on the recollection of features so acquired and so retained, and it is done every day." (Wharton on Crim. Evidence,—8th ed.—sec. 803, note.) Maciejewski in his own statement on the stand does not pretend to account for his whereabouts by any other witness save himself, although he said he was working regularly for a Mrs. McDonnell. We cannot say from this record that the jury were not justified in finding him to be one of the persons who took part in the robbery.

There is merit in the argument of counsel for the State that the testimony as to the guilt of the other plaintiffs in error is stronger than it is as to Maciejewski. Plaintiff in error Yost, as testified to by the police officers and by the complaining witness, Schmidt, on being asked, in the pres-

ence of Schmidt, whether he knew the latter, replied, "Yes; that is Mr. Schmidt." The officer then said to Yost, "What do you know about him?" Yost replied that he held up a gun to Schmidt on this particular day, September 24, and asked him if he bought bonds. Furthermore, the officers testified that they knew nothing about where the stolen bonds had been disposed of until Yost told them he had sold some to Peter Stefan, and Stefan testified that he had bought bonds from Yost. There are also the admissions of Pavlowski and Koch as to their taking part in the robbery. The question as to whether or not they had made these admissions was peculiarly a question for the jury, and the weight to be given to the testimony of the officers and Schmidt, as compared with the denials by plaintiffs in error, was within the special province of a jury to pass upon. The evidence justified the jury in the verdict they returned as to all the plaintiffs in error.

It is further argued by counsel for plaintiffs in error that the court erred in admitting in evidence the revolvers that were found under the mattress at Pavlowski's home. The testimony of the officers as to the admissions of Pavlowski and Koch, in the presence of Yost, as to these weapons made the admission of the revolvers in evidence competent. There is nothing said in *People* v. *Kuhn,* 291 Ill. 154, relied on by counsel for plaintiffs in error as to the admission of the revolvers being error, which would justify the conclusion that their admission was error. On the contrary, the reasoning of the court in that case would tend to support the conclusion that it was not error to admit them.

It is also argued by counsel for plaintiffs in error that the court erred, in instruction 6 given for the People, as to the credit the jury could give to the testimony of plaintiffs in error, this instruction stating, among other things, "that when he [the accused] does so testify he at once becomes the same as any other witness, and his credibility

is to be tested by and subjected to the same tests as are legally applied to any other witness, and in determining the degree of credibility that shall be accorded to his testimony the jury have a right to take into consideration the fact that he is interested in the result of the prosecution as well as his demeanor and conduct upon the witness stand," etc. Counsel for plaintiffs in error argue that the clause, "the jury have a right to take into consideration the fact that he is interested in the result of the prosecution," under the reasoning of this court in *People* v. *Munday,* 280 Ill. 32, and *People* v. *Harvey,* 286 id. 593, renders the instruction erroneous. We cannot so hold. The instructions criticised in the *Harvey* and *Munday cases* were worded differently from the one here in question, and what was said there has no controlling influence on the question here as to this instruction being erroneous. Instructions that contained the same wording as the part of the one objected to here have been sanctioned and approved by this court in numerous decisions, among others in *Hirschman* v. *People,* 101 Ill. 568, *Siebert* v. *People,* 143 id. 571, *Spears* v. *People,* 220 id. 72, *People* v. *Scarbak,* 245 id. 435, and *People* v. *Dougherty,* 266 id. 420. There can be no question, under the reasoning of this court in the decisions just cited, that instruction 6 given for the People in this case was not erroneous in the particulars criticised. This conclusion is not only in accord with the holding of this court, but instructions containing substantially the same wording have been upheld in other jurisdictions. See cases cited in note to *State* v. *Bartlett,* 19 L. R. A. (N. S.) 802; 50 Ore. 440.

Counsel for plaintiffs in error also argue that prejudicial error has been committed in the admission of certain testimony given by the police officers when they were on the witness stand. Most of the objectionable testimony was brought out on cross-examination by one of the counsel for plaintiffs in error, and when objected to by counsel it was stricken out by the court. The testimony objected to tended

to show that certain of plaintiffs in error had been arrested for other crimes. Of course, this evidence was improper, but the State is not responsible for questions asked by the attorney for the accused. (*People* v. *Singer,* 288 Ill. 113.) Under the written instructions to the jury they were told to disregard all the evidence that had been stricken by the court. In this state of the record we do not think the cause should be reversed on account of improper testimony brought into the record as this testimony was.

We find no reversible error in the record. The judgment of the criminal court of Cook county will therefore be affirmed.

*Judgment affirmed.*