(No. 19071.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LUCY HAGENOW, Plaintiff in Error.

*Opinion filed April 20, 1929.*

JOHN J. McMAHON, and MICHAEL A. ROMANO, (LOUIS GREENBERG, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and MERRILL F. WEHMHOFF, (HENRY T. CHACE, JR., and EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE HEARD delivered the opinion of the court:

Plaintiff in error, Lucy Hagenow, was convicted in the criminal court of Cook county of the murder of Mary Moorhead by committing an abortion on her on November 5, 1926, it not being necessary for the preservation of

her life to cause such abortion. The record is before this court for review upon writ of error.

Plaintiff in error testified denying her guilt. She stated that on November 5, 1926, deceased came to her office, giving her name as Margaret Sullivan; that on examination she was found to be pregnant with a child which seemed to be dead; that there was a bad-smelling discharge from the vagina; that she placed a small ball of antiseptic cotton in the vagina to prevent further discharge and disagreeable odor; that she told deceased that she would call at her home the next day; that she would take another doctor with her; that in case, on examination, the child was found to be dead, as supposed by both of them, it would be necessary to perform an operation to remove it, in which case she would have to employ another physician to assist in the operation; that deceased asked her to look after her until she was well and gave her $50; that she went to the address given the next day and found it was in a vacant block; that she did not see deceased again until after her arrest some weeks later.

On behalf of the prosecution there was introduced an alleged dying declaration made by deceased while she was on an operating table partially under the influence of an anæsthetic. Certain police officers, over the objection of plaintiff in error, testified to a statement made by deceased in the presence of plaintiff in error, that on November 5, 1926, plaintiff in error with an instrument performed an abortion upon her by inserting an instrument in her womb, and that on hearing this statement plaintiff in error immediately denied that she had performed an abortion. This evidence was afterwards stricken out by the court. It is doubtful if the effect of this hearsay testimony could be stricken out. When officer Specht was called the following took place: He testified: "I was present in the Illinois Central Hospital the afternoon of that day, in company with Captain Condon and officer John J. Burke.

Mr. Hoffman: "If the court please, I don't think I have to go through. It will be the same.

The court: "This is purely cumulative.

Mr. Hoffman: "Purely cumulative. It will be the same as the other.

Mr. McMahon: Objected to.

The court: Objection overruled. (To which ruling of the court the defendant, by counsel, then and there duly excepted.)

The court: "In other words, this is merely corroborative or cumulative of what officer Burke and Captain Condon testified. You don't want to go through this testimony?

Mr. Hoffman: "I don't care to.

The court: "All right, then.

Mr. McMahon: "Objected to.

The court: "Objection overruled.

Mr. Romano: "Does the State's attorney wish to withdraw this witness? He was apprised of your honor's ruling. Why does he call this witness?

The court: "To account for his presence or absence, I take it."

Charles H. Phifer, a physician, testified that he did not know obstetrics; that on November 7, 1926, he called upon deceased at her home; that she was having a great deal of pain; that she had been to see Dr. Hagenow; that he examined her abdomen by looking at it and found it was enlarged; that from the enlargement of the uterus and from her pains he determined that she was about to give birth to the contents of her uterus; that he knew the child was there at that time by the size of the uterus but did not know whether there was life; that he told her to call her physician, Dr. Hagenow; that he next saw her at the Illinois Central Hospital on November 12; that at that time her abdomen was flat and her uterus had been emptied; that after his examination he diagnosed septicemia and the cause of that septicemia. The following colloquy then ensued:

Q. "What was that cause?

Mr. Romano: "Objected to, if your honor please.

The court: "Do you know what the cause of the septicemia was?

A. "I do.

Q. "You may state. (To which ruling of the court the defendant excepted.)

Mr. Romano: "Does he know or does he have an opinion?

The court: "He knows.

The witness: "The result of an abortion done on November 5.

Mr. Romano: "That is objected to, and move the answer be stricken from the record.

The court: "Objection overruled.

The court: "Do you know of your own knowledge that it was on November 5?

A. "Only from the patient's statement.

The court: "That 'on November 5' may go out.

The court: "You do know that septicemia was the direct result of and caused by an abortion?

Mr. Romano: "Objected to.

The court: "Overruled."

The questions as to whether an abortion had been committed and of the cause of the septicemia were for the jury, and the court had no right, in the presence of the jury, to state, "You do know that septicemia was the direct result of and caused by an abortion." This witness further testified that deceased was given an anæsthetic and an examination was made, which disclosed that an operation had been performed by mechanical means; that she died November 29, 1926. Thereupon the following took place:

Q. "Doctor, have you an opinion as to the cause of her death?

Mr. Romano: "That is objected to.

The court: "Objection overruled. He may answer. (To which ruling the defendant excepted.)

A. "I have.

Q. "What is it?

A. "She died from septicemia following her abortion on November 5, 1926.

Mr. Romano: "Move that the answer be stricken out.

The court: "Overruled. (To which ruling the defendant excepted.)

Mr. McMahon: " 'Following her abortion' may be stricken.

The court: "It may stand. (To which ruling the defendant excepted.)"

This ruling of the court was erroneous, as the witness had testified that the only knowledge he had that an abortion had been committed on November 5 was from hearsay.

One of the allegations of the indictment was that the abortion was not necessary for the preservation of the life of the deceased. The proof does not support this allegation.

The court, at the instance of the prosecution, gave to the jury an instruction upon the subject of reasonable doubt which has been condemned in *People v. Cramer,* 298 Ill. 509, *People v. Johnson,* 317 id. 430, *People v. Birger,* 329 id. 352, and *People v. Rongetti,* 331 id. 581. We can see no reason why a court should persist in giving an instruction which has been so frequently condemned. If the prosecution insist on tendering instructions which they should know are erroneous, no complaint should be made that judgments of conviction are reversed by reason thereof.

The court, at the instance of the State's attorney, gave to the jury the following instruction:

"The court instructs the jury in the language of the statute that whoever, by means of any instrument, medicine, drug or other means whatever, causes any woman, pregnant with child, to abort or miscarry, or attempts to procure or produce an abortion or miscarriage, unless the

same were done as necessary for the preservation of the mother's life, shall be imprisoned in the penitentiary not less than one year nor more than ten years; or if death of the mother results therefrom, the person procuring or causing the abortion or miscarriage shall be guilty of murder."

To cause an abortion and to attempt to procure one are separate and distinct offenses. (*People* v. *Heisler,* 300 Ill. 98; *Clark* v. *People,* 224 id. 554.) The indictment in the instant case did not charge murder as the result of an attempt to commit abortion but the murder was charged as the result of an abortion. The conviction of plaintiff in error for murder by abortion would not be a bar to a prosecution of her for murder by an attempt to produce one. From this instruction the jury might be misled into believing from evidence in the case that they might find plaintiff in error guilty of murder as the result of an attempted abortion. It is the contemplation of the law that the jury shall be instructed only concerning the crime of which the defendant stands charged. (*People* v. *Jones,* 263 Ill. 564.) In *People* v. *Rongetti, supra,* we held that this instruction should not have been given, and it was clearly erroneous to give the same in this case.

Over the objection of plaintiff in error a police officer was allowed to testify that, some considerable time before, Dolly Madison had told him, not in the presence of plaintiff in error, that plaintiff in error had committed an abortion upon her. The court afterwards struck out all of this officer's testimony except his name and address. The admission of this evidence, although stricken out, was necessarily prejudicial to plaintiff in error.

Over the objection of plaintiff in error the court allowed the State's attorney to ask many manifestly improper questions in the cross-examination of plaintiff in error and ask many manifestly improper questions of witnesses for the State. From an examination of the record we are of

the opinion that plaintiff in error did not have that fair and impartial trial to which she was entitled under the law, and the judgment of the criminal court is therefore reversed and the cause remanded to that court.

*Reversed and remanded.*