(No. 19787

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LEWIS FLANAGAN, Plaintiff in Error.

*Opinion filed February 21, 1930.*

John W. Browning, and H. A. Evans, for plaintiff in error.

Oscar E. Carlstrom, Attorney General, Roy R. Helm, State's Attorney, and Joel C. Fitch, for the People.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Lewis Flanagan was indicted in the circuit court of Massac county for the involuntary manslaughter of Henry C. Walters. The jury found him guilty and after his motions for a new trial and in arrest of judgment were denied he was sentenced to the penitentiary. He prosecutes this writ of error for a review of the record.

Henry C. Walters, seventy years of age, resided in the city of Metropolis, in Massac county. He operated a grist-mill, cut wood and gathered mussel from the Ohio river. After his day's work was done he collected, by means of a push-cart, garbage which he fed to his hogs and chickens. On the evening of October 10, 1928, at about seven o'clock, he left his home with his cart and while proceeding west on Sixth street, between Metropolis and Ferry streets, was struck by an automobile and injured. He died eight days later.

On the night in question five persons heard a crash on Sixth street a short distance east of Ferry street. Four of these, A. F. Smith, Perry Martin, Earl Collard and Jesse Pansing resided on Sixth street in the immediate vicinity of the place of the accident, and the fifth, Sam Kelly, was a pedestrian along the street at the time. Immediately after hearing the crash, Smith saw a Ford automobile, without lights, turn north from Sixth street into Ferry street. He also heard a person shout and discovered a cart near the south curb of the street. As Smith started toward the cart, a man, afterwards identified as Walters, bleeding from a wound on the head, approached from the north side of the street. Simultaneously with the crash, Martin heard the application of the brakes of an automobile and an exclamation of pain by some person. He immediately went to the scene of the accident and saw Walters and the cart at the curb. Collard saw a man pushing a cart in Sixth street. When he heard the crash he saw the dust raised by an au-

tomobile proceeding west without lights. The man pushing the cart disappeared momentarily and then re-appeared and ran to the middle of the street. The automobile did not stop, but after the accident its speed was accelerated and it turned north on Ferry street. Meanwhile the cart rolled to the gutter on the south side of the street. Pansing saw a Ford touring automobile turn from Sixth street into Ferry street after he heard the crash. At the same time he discovered a man lying in the street groaning. Pansing assisted him to his feet and to the sidewalk. His hand and eye were cut and his face was skinned. Kelly not only heard the crash but also the application of the automobile's brakes. Walters was assisted into an automobile by Smith and several other persons and taken to a physician's office. Later in the evening he was removed to his home.

The chief of police of the city of Metropolis testified that the automobile of the plaintiff in error had no lights and that he was discovered about three hours after the accident in an outlying portion of the city, sparsely settled, where he was arrested. The sheriff of Massac county found that the automobile had neither bulbs in the light sockets nor a lens in one of its lamps.

Isabelle Walters, the widow of the decedent, testified that the plaintiff in error came to her home about midnight following the accident; that he told her husband he was the man who ran over him; that, when asked why he did not stop, he answered that he thought a person on the sidewalk was colored and he did not want to converse with a negro, and that he regretted the occurrence. Ruth Peoples, decedent's daughter, corroborated her mother's testimony, and added that her father told the plaintiff in error that he had run over him; that both wheels had passed over his shoulder and stomach; that he would never recover, and that the plaintiff in error should have stopped. To this statement, the plaintiff in error merely replied, according to the daughter's testimony, that he was in a hurry.

The evidence further disclosed that Walters received external bruises about the body and that he suffered pain in the shoulder and abdomen. A post-mortem examination was conducted. Four physicians testified and all found that Walters had peritonitis. Three of the physicians stated that it might have been caused by a blow or bruise. The fourth physician had expressed the opinion at the inquest that Walters died of peritonitis caused by the accident. On the trial he testified that he had discovered no indication of a bruise or other external injury upon Walters' body and that he believed peritonitis had been brought about by a hernia because, at the time of the accident, Walters was so afflicted, and because the witness, since the inquest, had heard that the automobile of the plaintiff in error never passed over Walters' body.

The plaintiff in error testified in his own behalf and the substance of his testimony is as follows: On the evening in question, at about six-thirty o'clock, while driving his Ford touring automobile west on Sixth street, he saw an automobile with glaring headlights approach and to avoid a collision he turned toward the curb and stopped. After the car had passed he proceeded west in the center of the street at a speed of seven or eight miles an hour. He had gone only a short distance when he discovered a cart about thirty feet ahead. To avoid striking the cart, he passed it to the left, but the fender of his car caught the handle of the cart and splashed some of the garbage over his automobile. The cart rolled toward the gutter on the south side of the street and the plaintiff in error stopped. The street was lighted, looking about he saw no one, and apparently having caused no injury or damage, he proceeded west and turned north on Ferry street. He called at one or two places and then returned to his home where he washed his automobile. Later he drove to the western boundary of Metropolis, where, at about ten o'clock, he was arrested. About midnight he called at Walters' home, introduced him-

self to Mrs. Walters, made inquiry concerning her husband's condition and stated that he had been accused of running over her husband, but denied the accusation. The plaintiff in error admitted that on the evening in question the battery in his automobile was very weak and that at times he had no lights. He denied that his automobile struck any person on that evening.

Before the trial began, the plaintiff in error made a motion to quash the indictment but the motion was denied. His first contention for a reversal of the judgment is that the indictment failed to apprise him of the charge laid against him, and that his motion, for that reason, should have been granted. The indictment in the present case is identical in form with the first count of the indictment subjected to attack upon the same ground, among others, in *People* v. *Falkovitch,* 280 Ill. 321, and there sustained. Section 6 of division 11 of the Criminal Code (Cahill's Stat. 1929, p. 996; Smith's Stat. 1929, p. 1061) provides: "Every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct which states the offense in the terms and language of the statutes creating the offense, or so plainly that the nature of the offense may be easily understood by the jury." An indictment or information is sufficient if it is specific enough to notify the defendant of the charge which he is to meet and to enable him to prepare his defense. (*People* v. *Westerdahl,* 316 Ill. 86; *People* v. *Love,* 310 id. 558; *People* v. *Cohen,* 303 id. 523; *People* v. *Connors,* 301 id. 249; *People* v. *Krause,* 291 id. 64; *People* v. *Falkovitch, supra; People* v. *Weil,* 244 Ill. 176). In addition to the general allegations pertaining to the particular charge, the instant indictment specifically set forth the assault made by the plaintiff in error upon Walters, the time and place of the assault, the means or instrument by which it was inflicted, the consequent death of his victim, and the time of the latter's death. It would be difficult more fully to apprise a defendant of the

charge made against him, and the trial court properly denied the motion to quash the indictment.

Complaint is made of certain instructions given to the jury at the prosecution's request. The first instruction told the jury, in substance, that if they believed from the evidence beyond a reasonable doubt that the plaintiff in error, at the time charged, by willful, wanton and reckless driving of his automobile, injured Walters in such a manner as to cause him to have an ailment called peritonitis; that he died from peritonitis; that running the car over him contributed materially to the ailment, and that, if it had not been for the injury, peritonitis would not have followed, then, if all the things recited had been proved by the evidence beyond a reasonable doubt, the law would deem the injury by the automobile to be the proximate, even if peritonitis was the immediate, cause of death. The objection urged to the instruction is that the evidence fails to show that the plaintiff in error, at the time in question, drove his autombobile negligently, recklessly and wantonly. The evidence does show that he drove his car over one of the streets of the city of Metropolis after dark without lights and that he struck Walters and his cart and proceeded on his way without stopping. Several instructions given at the request of the plaintiff in error were to the effect that unless the jury believed from the evidence beyond a reasonable doubt that the plaintiff in error unlawfully, negligently, recklessly and wantonly drove the wheels of his automobile over Walters' abdomen and thereby inflicted mortal wounds upon him, as charged in the indictment, and that he died of such wounds, their verdict should be not guilty. The evidence and the instructions given at the instance of the plaintiff in error justified the giving of the first instruction.

The second instruction, it is argued, took from the jury the decision of the question whether the striking of the decedent was the proximate cause of the peritonitis which ensued. The instruction was a further definition of proxi-

mate cause but it expressly left the determination of every question of fact to the jury.

It is objected that the third instruction singled out the testimony of the plaintiff in error when it informed the jury that, in determining the degree of credibility that should be accorded to his testimony, they had a right to take into consideration his interest in the result of the prosecution, his demeanor and conduct upon the witness stand, and the fact, if such was the fact, that he was corroborated or contradicted by credible evidence or by facts and circumstances in evidence. The objection of the plaintiff in error has reference to the concluding portion of the instruction and ignores that which preceded it. The instruction began with the statement that in this State one accused and on trial charged with the commission of a crime might testify in his own behalf or not as he pleased; that when he so testified, the jury had no right to disregard his testimony merely because he was accused of crime, but that he then became the same as any other witness and his credibility should be tested by and subjected to the same tests as were legally applied to any other witness. Instructions substantially the same as this instruction have been approved in *People* v. *Maciejewski,* 294 Ill. 390; *People* v. *Dougherty,* 266 id. 420; *People* v. *Zajicek,* 233 id. 198; *McGuire* v. *People,* 219 id. 16; *Rider* v. *People,* 110 id. 11; *Hirschman* v. *People,* 101 id. 568.

The fourth instruction told the jury that the rule of law which throws around the defendant the presumption of innocence and requires the State to establish beyond a reasonable doubt every material fact averred in the indictment is not intended to shield those who are actually guilty from just and merited punishment, but is a humane provision of the law which is intended for the protection of the innocent and to guard, so far as human agencies can, against the conviction of those unjustly accused of crime. The complaint is that this instruction is argumentative and at-

tempts to qualify or destroy the effect of the presumption of innocence. Instructions upon the same subject in language substantially the same have been approved in *People* v. *Guido,* 321 Ill. 397; *People* v. *Rees,* 268 id. 585; *People* v. *Scarbak,* 245 id. 435; *Spies* v. *People,* 122 id. 1, p. 82.

The fifth instruction told the jury that a doubt to acquit the defendant must be a reasonable doubt, and not a mere speculation or possibility, and that the State is not required to prove the defendant's guilt beyond all doubt but beyond all reasonable doubt. It is argued that this instruction attempts to destroy the effect of a reasonable doubt. While an instruction of this character scarcely enlightens the jury in any case, yet it cannot be said that it has the effect stated. Four instructions defining a reasonable doubt were given at the request of the plaintiff in error. Considered as a series, the jury were fully and fairly instructed upon the subject.

By the sixth instruction the jury were informed that involuntary manslaughter occurs without intention, will or motive to commit the crime, and that, to convict, it was not necessary to prove there was any motive in the defendant's mind at the time to kill or injure the decedent. The objection made to the instruction is that without the exercise of the will there could be no such reckless, wanton or felonious conduct as is required to sustain the instant charge. Involuntary manslaughter, the charge in the present case, necessarily involves an absence of intention to cause death. An intention to commit involuntary manslaughter is a contradiction in terms. The instruction correctly stated the law applicable to this case. *People* v. *Schwartz,* 298 Ill. 218.

The seventh and eighth instructions were repetitions respectively of sections 145 and 143 of the first division of the Criminal Code, (Cahill's Stat. 1929, pp. 952, 953; Smith's Stat. 1929, pp. 1016, 1017) the former defining involuntary manslaughter and the latter, after defining manslaughter generally, differentiating between the voluntary

and involuntary act. The complaint is that these instructions confused and misled the jury. Two instructions on manslaughter, one of which defined involuntary manslaughter, were given at the request of the plaintiff in error. Instructions should not only state the law correctly but should also be applicable to the case presented. (*People* v. *Kessler*, 333 Ill. 451; *People* v. *Corbishly*, 327 id. 312; *People* v. *Jones*, 313 id. 335). An examination of the several instructions upon the subject discloses that when considered together they complied with both of these conditions. Apparently the jury were neither confused nor misled by the seventh and eighth instructions for they found the plaintiff in error guilty of involuntary manslaughter as charged.

It is finally contended that the evidence is insufficient to justify a conviction. Walters and his cart were struck by an automobile driven without lights on a city street after it became dark. The automobile was not stopped but turned into the next intersecting street. Three hours later the plaintiff in error was found with his car on the outskirts of the city. In the meantime he had stopped at his house to wash from his car a portion of the contents of the cart which had splashed over the car as the result of the collision. About midnight he called at Walters' home and according to the testimony of the latter's widow and daughter, he admitted that he had run over Walters. While he contradicted the widow and daughter, asserting that he merely said he was accused of running over Walters, he admitted that he struck the cart. He testified that he did not see Walters in the street, yet the witnesses who heard the crash had no difficulty in finding him. The immediate cause of Walters' death was peritonitis from which, four physicians testified, he suffered. Three of these physicians stated that a blow or bruise might cause peritonitis. The foregoing and other facts and circumstances shown by the evidence are sufficient to sustain a verdict of guilty. The law has committed to the jury the determination of the

credibility of the witnesses and of the weight to be given to their testimony, and where the evidence is conflicting this court will not substitute its judgment for that of the jury. In this case it cannot be said that the verdict is palpably contrary to the weight of the evidence or that the evidence is so unreasonable, improbable or unsatisfactory as to justify a reversal of the judgment on that ground.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*