(No. 20164.—
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JULIUS BECKER, Plaintiff in Error.

*Opinion filed June 20, 1930—Rehearing denied October 14, 1930.*

HAROLD L. LEVY, (ELWYN E. LONG, and GEORGE W. SPRENGER, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, and JOHN HOLMAN, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error was convicted in the criminal court of Cook county of the crime of robbery while armed with a gun and brings the cause here for review.

On the afternoon of December 8, 1928, at about two o'clock, three men entered the place of business of J. H. Stouffer Company, at 2619 Prairie avenue, in the city of Chicago. The State's witness Virginia Kenny, a stenographer employed there, was at her desk when these men came in. One of them asked if the proprietor was there. On being told that he was not, he said they would return later. They went out into the hallway and shortly returned and ordered her to go with them, telling her that the place was being held up. This witness and most of the other employees of the building, of whom there were twenty-five at that time, were herded into the washroom while the three men went through the cash register and secured $10 in cash. The witness Virginia Kenny testified that the man who first came to her desk and asked for the proprietor was plaintiff in error; that when they returned another of the men had a gun in his hand, and when she was taken

across the hall to another room Becker stood guard while the other men searched the office. She saw a gun in the hands of Becker through the door, which he had left open while on guard. She testified that she had a conversation with Becker for about ten minutes altogether; that while he was standing guard at the door he held a handkerchief up to the lower part of his face but when he approached her at the desk he wore no disguise, and that she saw him without covering on his face for at least five minutes. She testified that he was wearing a gray cap and a dark-blue overcoat.

One Feaster Cockrell, another employee at this place, identified Becker as one of the robbers. Cockrell was brought up from the basement by one of the men and was taken past Becker, who was standing guard at the door. He testified that Becker had on a gray cap and a dark-blue overcoat and had a handkerchief across the lower part of his face. He identified Becker in the court room as one of those who participated in the robbery.

Hugh Sweeney, a man employed in the neighborhood, testified that about 2:30 o'clock in the afternoon of December 8, 1928, he was just across the street from Stouffer & Co. when he saw three young men running out of that place with revolvers in their hands; that when they reached the sidewalk one of the employees came out and shook his fist at them and said something, and that one of the men replied with an epithet and a direction to get back inside the building or he would "drop" him. This witness testified that one of the men who ran out of that house that day was Becker; that it was he who was doing the talking, and that witness was about forty-five feet away from Becker when the men ran from the house to an automobile waiting on the street. The three men got in the automobile and drove north on Prairie avenue, and the witness took the number, which was 1303939. He also described the automobile as a sedan with green body, with narrow cream-

colored stripes and yellow wheels. It is not denied that Becker owned such an automobile bearing that number. Sweeney testified that when he learned that there had been a hold-up he went to Stouffer & Co. and gave the number to Virginia Kenny, who called the police.

John Gilfeather, sergeant of police, testified that he arrested Becker on December 12 through the automobile number when Becker called at the police station to get his automobile, which had been brought in by the police. Gilfeather testified that when arrested Becker stated that he had bought the car about a month before, and that when asked where he was on December 8, replied that he was at a hotel at 2900 Jackson boulevard with a girl. He was asked to give her name, but said he did not care to give it and did not give it. This witness and the witness Sweeney testified that subsequent to the arrest of Becker, Sweeney and the officer went back into the jail and along the passageway in front of a number of cells, and that when they came to the one in which Becker was locked Sweeney said: "That is the fellow there; that is one of the men I saw running away from Prairie avenue on the day of the robbery."

The defense was an alibi. Defendant placed on the stand a garage man named Abe Tunic, who testified that the automobile belonging to Becker was in his place throughout the entire day of December 8 and was being repaired by a man by the name of Nelson. There was also introduced the testimony of Louis Pearlman, who testified that on Saturday, December 8, he was in the room of Becker at the Coolidge Hotel between the hours of 1:00 and 3:00; that the witness and his wife were there fixing some curtains to the windows; that Becker was there in bed during that time and stated that he was not feeling well. Pierce Williams testified that he was the manager of the Coolidge Hotel, and that he on this Saturday was up in Becker's room and saw him in bed and saw Mr. and Mrs. Pearlman there fixing the window curtains. Testimony was

also offered as to previous good character of the defendant. Officers Gilfeather and James Euson, in rebuttal, testified that Becker had told them, when arrested, that he was at the Coolidge Hotel on that day with a "broad," meaning a woman, and that his car was standing on Sacramento boulevard.

Plaintiff in error seeks reversal of the judgment of conviction on the ground of improper instructions to the jury and the weight of the evidence. It is contended that it was error to give the third instruction given on behalf of the People. This instruction told the jury that one accused of crime may testify in his own behalf or not, as he pleases; that if he does, the jury have no right to disregard his testimony merely because he is accused of crime but that he becomes at once the same as other witnesses, and his credibility is to be tested by and subjected to the same tests as are legally applied to any other witness. The jury by that instruction were further told: "The jury have a right to take into consideration the fact that he is interested in the result of the prosecution, as well as his demeanor and conduct upon the witness stand; and the jury may also take into consideration the fact, if such is the fact, that he has been corroborated or contradicted by credible evidence or by facts and circumstances in evidence." This instruction has been approved in numerous cases by this court and it was not error to give it. *People* v. *Flanagan*, 338 Ill. 353; *People* v. *Maciejewski*, 294 id. 390; *People* v. *Dougherty*, 266 id. 420; *People* v. *Zajicek*, 233 id. 198; *Maguire* v. *People*, 219 id. 16; *Rider* v. *People*, 110 id. 11; *Hirschman* v. *People*, 101 id. 568.

The twelfth instruction is also assigned as error. This instruction is as follows:

"The court instructs the jury that before a defendant can avail himself of the defense of an alibi the proof must cover the whole of the time of the commission of the crime so as to render it impossible or highly improbable that

the defendant could have committed the act and unless the proof in a case covers the whole time so as to render the commission of the crime by a defendant impossible or highly improbable, then that defense is not available to such defendant."

This instruction was considered at length in *People* v. *Schladweiler,* 315 Ill. 553, where it was pointed out that confusion had existed concerning instructions on the defense of alibi. The cases were there reviewed at length, and a similiar instruction was held to be a proper definition of an alibi and a proper instruction concerning that defense, and that such an instruction does not deal with the measure or probative value of proof offered on the subject. The instruction was there approved. In *People* v. *Durand,* 321 Ill. 526, this instruction was again approved. In *People* v. *Thompson,* 321 Ill. 594, the same instruction was considered. The objection there raised was, that as the evidence covered the whole of the time, the giving of the instruction would cause the jury to believe that in the opinion of the court there was some doubt whether the whole time was covered. It was again reiterated that the instruction was a proper definition of an alibi and did not affect the quantum of proof or the probative value of it. In *People* v. *Witt,* 333 Ill. 258, this instruction again came before the court and was approved. Plaintiff in error cite *People* v. *Reno,* 324 Ill. 484, and *People* v. *Braidman,* 323 id. 37, in support of their contention that this instruction was erroneous. Those cases do not so hold but it was in those cases held that the instructions were not pertinent to the facts. The instruction in this case as to the defense of alibi was properly given.

Counsel for plaintiff in error also complain of the refusal of the court to give defendant's instruction No. 1. This instruction had to do with an alibi, and informed the jury that it was not incumbent upon the defendant to prove the defense of alibi beyond a reasonable doubt but it is

sufficient that if from all the evidence the jury have a reasonable doubt whether the accused was present and committed the crime alleged in the indictment. This instruction was fully covered by instruction No. 9 given on behalf of the defense, and it was not error to refuse to give it in another form.

It is also argued that it was error to refuse defendant's instruction No. 10. This instruction told the jury that if they could reconcile the evidence in the case upon any other reasonable hypothesis than that of the guilt of the defendant it was their duty so to do and to acquit him. This same instruction, in different forms, was given to the jury at the request of plaintiff in error as defendant's instructions No. 3 and No. 6.

Plaintiff in error also complains of the refusal to give the eleventh instruction offered by him. This instruction is as follows:

"No statement as to any other transactions other than those contained in the indictment upon which the defendant is being tried, is to be considered by you as evidence of guilt in this case and should be entirely disregarded by you in your deliberation on the guilt or innocence of the defendant."

This instruction is both confusing and incorrect. The jury are entitled to consider all evidence admitted and not stricken out by the court. No evidence so stricken out or improperly admitted has been called to our attention in the briefs or abstract or are objections thereto shown to have been made on the trial, and this contention is without merit.

Lastly, it is argued that the verdict of the jury is not sustained by the evidence. An extended argument is made on behalf of plaintiff in error by which it is sought to lessen the probative force of the testimony of the four witnesses for the State who identified plaintiff in error. His alibi evidence as to his whereabouts on that day was direct, as was the identification by the State's witness. The oppor-

tunity for the witnesses, particularly Virginia Kenny, to see Becker and to identify him was unusual. He twice came into the room without a disguise or covering on his face. She had an opportunity to see him at a distance of not over fifteen feet and to talk with him. The witness Sweeney not only identified him but identified his car and described it, and by his description of the car and the license number the car was found and through it Becker was arrested. The car was of an unusual color. Becker owned such a car. Sweeney likewise identified plaintiff in error while the latter was in a cell at the police station as Sweeney and the officers were walking by. Becker was taken down to Stouffer & Co. after his arrest and was there identified by the four witnesses who testified. It is argued that one of the employees, Michali Mohn, who first testified that Becker was one of the men and then stated he was not sure, had as much an opportunity to observe the robbers as did those who positively identified Becker. Mohn's testimony showed that in the process of herding the employees into the washroom he was struck over the head and knocked down and that he called loudly for help. It was evident that by reason of his experience at the time he was more excited than the balance of the employees, and it is not shown that he had an opportunity equal to that of the others testifying, to observe whether one of the robbers was Becker.

The issue in this case was one peculiarly for the jury. The record contains no errors of law. The testimony of the witnesses for the State and of those for the defense were in effect directly contradictory. Both could not be true. The jury, who saw and heard the witnesses, were specifically charged with the duty of determining the question of fact, and this court would not be justified on this record in setting aside their verdict and reversing the judgment of conviction. *People* v. *Martin,* 304 Ill. 494.

The judgment of the criminal court is therefore affirmed.

*Judgment affirmed.*