(No. 30167.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error *vs.* JAMES M. YOUNG, Plaintiff in Error.

*Opinion filed September 18, 1947—Rehearing denied Nov. 17, 1947.*

STONE, J., took no part.

JOSEF T. SKINNER, of Princeton, CARL A. MELIN, of Cambridge, and ANDREWS & ANDREWS, of Kewanee, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, of Springfield, (REYNOLDS M. EVERETT, State's Attorney, of Cambridge, of counsel,) for the People.

Mr. JUSTICE GUNN delivered the opinion of the court:

Defendant, James M. Young, was indicted for the crime of abortion by the grand jury of Henry County. A motion to quash was overruled. He pleaded not guilty, and upon a trial by a jury was found guilty. A motion for new trial was overruled, and the defendant was sentenced to the penitentiary for a term of not less than one year nor more than three years.

The defendant is sixty years of age, and had practiced medicine in Annawan, Illinois, for more than thirty years. His practice for many years was surgery, but about five years ago he was so severely injured in an automobile accident that he abandoned surgery and specialized in diseases of women.

To establish the guilt of the defendant the People proved that Laura Wolborn, about eighteen years of age, wife of Edward Wolborn, and former wife of one John McBride, ascertained in the month of March, 1946, that she was pregnant, after consulting two different doctors in Clinton, Iowa. In the early part of April, 1946, she

and her husband drove to Annawan, about fifty miles from Clinton, and called upon the defendant at his office. She did not know him, but her husband testified he had heard of him. Mrs. Wolborn asked him if he would perform an abortion, and claims the doctor agreed he would do so for $50. The husband was not present at this meeting. Mrs. Wolborn did not have so much money with her, but said she told him she would have it within about two weeks. On April 17, 1946, Mrs. Wolborn and her husband again visited the defendant at his office. She first consulted with him alone, and claims the defendant agreed to perform the abortion; so she then asked if her husband could be present, and, upon the defendant's consenting, he came into the room and witnessed the operation. She did not take an anesthetic, and both she and her husband testified the doctor used two or three metal instruments about six or eight inches long, which he inserted into and with which he punctured the uterus. After the operation she paid him $50 in cash. The defendant said she would observe some results in about a week or ten days, and gave her some medicine to use.

On May 1, 1946, Mrs. Wolborn, while at home, began to hemorrhage and called a Clinton doctor to her home, who, when he found she was having a miscarriage, refused to treat her in her home. He required Mr. and Mrs. Wolborn to sign a written statement of the facts pertaining to her condition, and told them to call the defendant. The husband did call the defendant, and testified he said he was taking his wife to the hospital, upon which the defendant said "do not take her to the hospital; you will get us all in trouble." The Clinton doctor then talked with the defendant, and told him he had better come to the hospital in Clinton, but the defendant refused to do so. Mrs. Wolborn was taken to the hospital, where shortly after she gave birth to an immature dead child. There was also evidence tending to prove that Mrs. Wolborn was in good

health, and had done nothing herself to produce an abortion.

Upon his part the defendant testified in his own behalf. He denied he had done anything beyond making an examination of Mrs. Wolborn at her request. He claimed this examination disclosed among two or three ailments a "cervical erosion," and treated her accordingly. He described the treatment he gave, which would not induce an abortion, and stated that, in fact, he did not know she was pregnant. He denied Mrs. Wolborn made the first visit described by her the early part of April, and denied seeing the husband at any time, until his appearance in court. He admits receiving the $50 on April 17, but says he returned it at the time he got a couple of black market tires from her. He produced the instruments used in the examination and exhibited their use to the jury, and asserted they could not be used for abortion purposes, and denied using the instruments of the type described by Mrs. and Mr. Wolborn. The doctors attending the birth gave no opinion as to the cause of the miscarriage.

Summed up briefly, two witnesses testified the defendant, for a price, performed an abortion, and defendant totally denies it and all relevant facts connected with it. The principal errors assigned are: (1) the evidence fails to show guilt beyond a reasonable doubt; (2) the court erred in refusing to allow certain exhibits to be received in evidence; (3) the court erred in limiting the cross-examination of Mrs. Wolborn; (4) certain remarks of the court were prejudicial.

During the testimony the defendant exhibited a pair of forceps and a speculum, and demonstrated how they were used in treating Mrs. Wolborn, and how they did not correspond with the description of instruments mentioned by Mr. and Mrs. Wolborn. At the close of his testimony these instruments were offered in evidence, and the objection of the State's Attorney was sustained. The court has a reasonable discretion in the admission or rejection of

exhibits in evidence, or in permitting them to be taken to the jury room. (*People* v. *Andrae*, 305 Ill. 530; *People* v. *Clark*, 301 Ill. 428.) However, the court in sustaining the objection of the State said: "I think they have served their purpose. They have been demonstrated to the jury. Beyond that they have no evidentiary value."

While the last sentence might have been injurious, if said in relation to anything used in the commission of the crime, it is not pointed out how the language could be harmful when applied to something used only to explain the testimony of the doctor. It is obvious they had no resemblance to the instruments described by the witnesses, and were displayed for the purpose of making the testimony of the defendant more understandable. The exhibits admittedly could not have been used for performing an abortion, and hence could have no other purpose than of demonstration in the aid of the defendant's version of what was done.

In *People* v. *Hagenow*, 334 Ill. 341, the judge made the direct assertion of a fact in controversy. In *People* v. *Brooks*, 340 Ill. 74, the court made a statement that value was unimportant in a larceny prosecution. These cases are not parallel with the instant case. In *Chicago and Alton Railway Co.* v. *Walker*, 217 Ill. 605, a skeleton of a foot was used by a doctor to illustrate an ankle injury but was not allowed in evidence, the court holding the exhibit was used merely to illustrate the testimony of the witness.

A trial court frequently makes explanation of his rulings, and this one did not involve any issue in the case. In *Beasley* v. *People*, 89 Ill. 571, we commented: "Where objections are constantly being raised on the trial, the court must, of necessity, in passing upon them, remark concerning them in the presence of the jury, and it may be such remarks are not always accurate expressions of the law. But such questions are pressed upon the attention of the court when there is no opportunity for reflection, and it

would be adopting too strict a rule to hold that every expression of the court * * * would be * * * the ground of reversal." We think sustaining an objection to the introduction in evidence of the exhibit, as well as the remarks of the court at the time of its ruling, did not constitute error.

Defendant also complains that the court erred in refusing to allow him, on cross-examination, to ask Mrs. Wolborn if she did not know she could be prosecuted by being a party to an abortion case. The State's Attorney objected, and claimed that the woman operated on was not an accomplice, and this seems to be the law of other jurisdictions, (1 Am. Juris. p. 151-cases collected-) the point not seeming to have been decided in Illinois. The defendant claims that because of this ruling he did not ask the same question of Mr. Wolborn. The position of the two witnesses was not the same. The ruling as to Mrs. Wolborn was based upon the assumption that she was not an accomplice or an accessory, which seems to have some support in the law. This is not true of Mr. Wolborn, but the point was not saved, because no question was asked him, nor a ruling made by the court upon it, to assign error.

Defendant takes exception to certain instructions. Instruction No. 2 is criticized because he claims it assumes that the defendant well knew the instruments used would produce an abortion. We think defendant misconceives the instruction. The only thing it purported to do was to state to the jury what was contained in the indictment, and the part to which he refers was a necessary allegation in the indictment. It was given and used for no other purpose.

Instruction No. 5 is also criticized because it tells the jury the weight to be given the testimony of the defendant, and the method of testing his credibility. It is a sufficient answer to say this identical instruction was approved

in *People* v. *Flanagan,* 338 Ill. 353, and many other cases decided both before and after that case. Also, complaint is made because of the refusal to give defendant's instruction No. 4. This instruction recited the elements necessary to be proved beyond a reasonable doubt in a prosecution for abortion, and, among other things, required that the State prove that the defendant, and *no one else,* committed the crime. The State is not under the obligation to prove *no one else* was concerned with the crime if it is proved the defendant is the guilty party. He may have accomplices or accessories, but that does not prevent his responsibility. However, all of the matter contained in this instruction, except the words "and no one else," was covered by other instructions. It was substantially covered in the People's instruction No. 1, and also in defendant's given instructions Nos. 3 and 4.

It is contended also that the court erred in refusing to give defendant's refused instructions Nos. 10 and 11. Both of these instructions defined accomplices, and the weight to be given to the testimony of an accomplice, and the caution with which testimony of an accomplice should be considered. It is not necessary that the court give a number of different instructions upon the same subject. Defendant's given instruction Nos. 6 and 7 contained almost the same matter, instruction No. 6 telling the jury that, if Mrs. Wolborn and her husband went to the office of the defendant for the purpose of securing an abortion, they both became accomplices, and No. 7 telling the jury the weight to be given to the testimony of accomplices and that it should consider the evidence subject to great suspicion, and proceed with great caution. These two instructions covered the same principle sought by defendant's instructions Nos. 10 and 11. In connection with these instructions we might remark that, although the court sustained the objection to the questions propounded to Mrs. Wolborn upon cross-examination, any error that could pos-

sibly arise therefrom was cured by the instructions telling the jury that she could be considered an accomplice. While, under the law, we have doubts she may be so considered, yet the jury was so informed, and the only possible purpose in asking such questions was to cause the jury to believe that she was equally guilty with the defendant, and therefore her testimony was subject to the same tests.

The defendant's final contention is that the evidence fails to establish his guilt beyond a reasonable doubt. While it is true the husband in this case was an accomplice, and Mrs. Wolborn, at least, an interested witness, the facts remain that Mrs. Wolborn was pregnant; that she did visit the defendant; that he did make an examination and use certain instruments, and collected $50 before other services were rendered. These facts corroborate the People's witnesses, although the kind and purpose of the instruments used is disputed by the defendant. The attention of the jury was especially directed to this phase of the defense, and it was instructed that, even if instruments were used by the defendant, it was necessary to prove beyond a reasonable doubt the defendant had the criminal intent and did use them to commit the abortion charged.

Everyone charged with a crime is entitled to a fair and impartial trial, and when he is so charged and tried by a jury, he has no just cause to complain if he is found guilty. He has been so tried by a jury without error upon the part of the court, and the result must be attributed to his guilty conduct.

The judgment of the circuit court of Henry County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE STONE took no part in the consideration or decision of this case.