(No. 13772.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. CHRIST CAMBERIS, Plaintiff in Error.

*Opinion filed April 21, 1921.*

1. CRIMINAL LAW—*when careless driver of automobile is guilty of manslaughter.* One doing an act of gross carelessness, even in the performance of what is lawful, and *a fortiori* of what is not lawful, or in negligently omitting a legal duty, whereby death ensues, is indictable for murder or manslaughter, and a person who by careless or furious driving unintentionally runs over and kills another is guilty of manslaughter.

2. SAME—*driver of automobile is presumed to know provisions of Motor Vehicle act.* The driver of an automobile is presumed to know the provisions of section 22 of the Motor Vehicle act as to what is an unreasonable rate of speed, and a driver who drives at a prohibited rate of speed or in a manner expressly forbidden by statute and thereby causes the death of a pedestrian is criminally responsible, whether the decedent's failure to use due care contributed to the injury or not.

3. SAME—*a street in a city is a public highway—instruction.* A street in a city is a public highway, and where the evidence in a prosecution for manslaughter, caused by the careless driving of an automobile, shows that the accident occurred in a much traveled street in a city, an instruction in the language of the statute as to unreasonable rates of speed in a public highway is not misleading although the indictment refers to the place of the accident as a street and road.

4. SAME—*whether road is a public highway may be proved by parol evidence.* Whether a street or road is a public highway may be proved by parol evidence.

5. SAME—*when withdrawal of count after evidence is in does not prejudice the defendant—verdict.* In a prosecution for manslaughter, caused by the careless driving of an automobile, the withdrawal of a count based upon a violation of a city ordinance, without striking from the record the introduction of the ordinance in evidence, is not prejudicial to the defendant, where the reckless driving of the automobile is clearly proved to be in violation of the State Motor Vehicle act; and affidavits of jurors that they took said ordinance into consideration cannot be received to impeach their verdict.

6. SAME—*errors which are not prejudicial will not justify reversal.* Errors in the admission of evidence or rulings on the law

which are not of a prejudicial character will not justify a reversal of a judgment of conviction, if the jury, acting reasonably on the competent evidence and under proper instructions, could have reached no other conclusion.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. GEORGE F. BARRETT, Judge, presiding.

WILLIAM A. ROGAN, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, and HENRY T. CHACE, JR., of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiff in error was indicted in the criminal court of Cook county for manslaughter, and on trial before a jury was found guilty and judgment was entered on the verdict. From that judgment this writ of error has been sued out.

April 10, 1919, Andrew F. Bock, twenty-two years of age, living with his parents, was getting off the front end of a street car at Potomac street and Crawford avenue, in Chicago, when he was struck by an automobile driven by plaintiff in error at a rapid rate and dragged about 200 feet after being hit. He was taken from under the automobile alive but unconscious and carried to a hospital, where he died without regaining consciousness. The evidence shows that plaintiff in error shortly before the occurrence bought a second-hand Mitchell touring car and employed a young man named George Rainey, apparently an experienced chauffeur, to drive the same. The plaintiff in error was in the candy business, owning and managing four stores in Chicago, and bought the automobile to use in his business. On the day in question Rainey and the plaintiff in error went around in the automobile to various places to

deliver candy.  Rainey testified that when they came out
of an ice cream parlor at Lake street and Hamlin avenue
plaintiff in error said to Rainey: "I will drive; I'll be the
chauffeur and you be the helper;" that the driving of the
automobile was turned over to plaintiff in error; that when
they were going north on Crawford avenue near Potomac
street, where the accident occurred, the automobile was
going pretty fast and witness told plaintiff in error he had
better slow down,—that the street car which was just ahead
of them was going to stop; that the automobile was not
slowed down and was about to bump into the street car
when Rainey reached over and grasped the steering wheel,
turning it quickly, so that the automobile swerved out and
just scraped the rear end of the street car, which was stand-
ing, and then struck the deceased just after he had alighted
from the front end of the street car; that after the acci-
dent witness changed seats with plaintiff in error.   Plain-
tiff in error testified that he had bought the automobile in
question, paying $400 for it, and had driven it once before;
that just previous to the accident Rainey seized the wheel
of the automobile and turned it, and that both he and
Rainey had their hands on the wheel at the time of the
accident; that he tried to stop the automobile with the foot-
brake but it would not work.  Rainey testified that the
brake on the automobile did not work well, and that he
did not know whether the plaintiff in error got his foot
on the brake or on the accelerator.  Plaintiff in error de-
nied that Rainey told him to slow down before they reached
the street car but said he tried to stop the automobile.  He
also denied that Rainey told him that he (plaintiff in er-
ror) had better let Rainey drive along Crawford avenue
because the street was crowded.  He testified that he had
stopped the automobile once before the time of the acci-
dent but did not know which foot he used; that he thought
there was a horn on the automobile for signaling but was
not sure; that he did not make any sort of signal; that

he turned to pass the street car because he could not stop; that the automobile was about fifty feet from the street car when Rainey grabbed the wheel; that both he and Rainey turned the automobile out from behind the street car; that Rainey finally stopped the automobile. The testimony of both plaintiff in error and Rainey was to the effect that plaintiff in error had driven the automobile once before his attempt to drive on the day of the accident. Rainey stated that the automobile at the time of the accident was going 25 or 30 miles an hour, while plaintiff in error thought it was going somewhat slower than that. Several witnesses who were on the street car at the time of the accident, including the motorman and the conductor and one or two passengers, and also a man who was riding in an automobile near the scene, all testified that the automobile was going as fast as 20 or 30 miles an hour. Some of them thought it was going faster, but they all agreed that if the automobile had not turned out it would have run into the street car. One of the witnesses was a policeman on the street car, who jumped off after the accident, ran after the automobile and shouted for the parties to stop. He testified that when the automobile stopped the deceased was taken from under it; that witness asked who was running the automobile, and Rainey answered that plaintiff in error was running it; that he then asked plaintiff in error why he did not stop, and he said he could not put his foot in the right place; that then he asked him how long he had been running the automobile, and he said two days. It seems clear from the evidence that both plaintiff in error and Rainey had their hands on the steering wheel at the time of the accident.

There were four counts in the indictment. The first count charged plaintiff in error with running a certain motor vehicle called an automobile, against, toward, over and upon Bock, unlawfully, feloniously and willfully knocking him down and dragging him and so crushing him that he

died from the effects. The second count charged that the plaintiff in error was driving an automobile along and upon a certain road and street known as Crawford avenue, in Chicago, where it had been for a long time prior thereto the custom and habit for a large number of persons to cross the aforesaid road and street on foot, and plaintiff in error well knew of this custom and habit, and that it was then and there his duty to drive, direct and propel his automobile with due care and caution, to-wit, at a safe and reasonable rate of speed, with respect to the persons so in the habit and custom of crossing said road and street, and that plaintiff in error, in violation thereof, did unlawfully drive, direct and propel his automobile and cause the same to be propelled without due care and caution and at a dangerous, unsafe and excessive rate of speed with respect to the safety of the persons crossing, to-wit, at the rate of 25 miles an hour, and with unlawful and culpable negligence forced and propelled his automobile against Bock, knocking him down and inflicting upon him mortal wounds. The charges of the third count were substantially the same as those in the second count. The fourth count charged that on the day in question, and long prior thereto, there was an ordinance in force in the city of Chicago relating to the stopping of vehicles within ten feet of a street car stopped for the purpose of discharging or taking on passengers, and it then set out the ordinance in question, following that by allegations that the street car was then and there being operated upon Crawford avenue, and that Bock, while about to become a passenger on said street car and while he was entering said car, was struck by the automobile driven by plaintiff in error.

It is argued by counsel for plaintiff in error that he is not guilty on this record because it is shown that it was the act of Rainey, and not that of plaintiff in error, that caused Bock's death. It seems clear from the evidence in this record that if plaintiff in error had not, just before

the accident, been driving the automobile in a reckless and wanton manner, in utter disregard of the safety of others, there would have been no cause for attempting to avoid a collision with the street car, and that at the time of the accident both plaintiff in error and Rainey were attempting to avoid striking the rear end of the street car by steering the automobile around it.   There can be no question that plaintiff in error was responsible even if the accident was caused by Rainey taking hold of the steering wheel to avoid a collision with the street car.   One doing an act of gross carelessness, even in the performance of what is lawful, and *a fortiori* of what is not lawful, or in negligently omitting a legal duty, whereby death ensues, is indictable for murder or manslaughter.   If a person by careless or furious driving unintentionally runs over another and kills him it will be manslaughter.   (1 Bishop's New Crim. Law, sec. 314, and cases cited; see, also, Huddy on Automobiles, sec. 216.) If a man, contrary to law and good order and public security, fire off a pistol in the streets of a town and death be thereby produced, he must answer criminally for it, whether it be *malum in se* or merely *malum prohibitum.* (*Sparks* v. *Commonwealth,* 66 Ky. 111.)   This last decision quotes with approval from 1 Russell on Crimes, p. 636: "There are many acts so heedless and incautious as necessarily to be deemed unlawful and wanton though there may not be any express intent to do mischief, and the party committing them, and causing death by such conduct, will be guilty of manslaughter."

Section 22 of the Motor Vehicle act in force January 1, 1920, provides: "No person shall drive a vehicle of the first division as described in section 2 of this act, upon any public highway in this State at a speed greater than is reasonable and proper having regard to the traffic and the use of the way or so as to endanger the life or limb or injure the property of any person.   If the rate of speed of any motor vehicle or motor bicycle of said first

division, operated upon any public highway in this State where the same passes through the closely built-up business portions of any incorporated city, town or village exceeds ten (10) miles an hour, or if the rate of speed of any such motor vehicle or motor bicycle operated on any public highway in this State where the same passes through the residence portions of any incorporated city, town or village exceeds fifteen (15) miles an hour, * * * such rates of speed shall be *prima facie* evidence that the person operating such motor vehicle or motor bicycle is running at a rate of speed greater than is reasonable and proper having regard to the traffic and the use of the way or so as to endanger the life or limb or injure the property of any person." (Hurd's Stat. 1919, p. 2626.) This court quoted with approval similar provisions of the Motor Vehicle act of 1917 in *People* v. *Falkovitch*, 280 Ill. 321, and there held that the driver of an automobile must be presumed to know the provisions of this statute, and that the automobile which the evidence showed he was driving and with which the deceased was struck and killed came clearly within the statutory definition of the term "motor vehicle." The same must be held here with reference to the driver of this automobile. "One who willfully or negligently drives an automobile on a public street at a prohibited rate of speed or in a manner expressly forbidden by statute, and thereby causes the death of another, may be guilty of homicide; and this is true although the person who is recklessly driving the machine uses, as soon as he sees a pedestrian in danger, every effort to avoid injuring him, provided that the operator's prior recklessness was responsible for his inability to control the car and prevent the accident which resulted in the death of the pedestrian. * * * If the culpable negligence of the defendant is found to be the cause of the death he is criminally responsible whether the decedent's failure to use due care contributed to the injury or not." (2 R. C. L. 1212; see, also, *State* v. *Campbell*,

18 Ann. Cas. (82 Conn. 671,) 236, and cases cited in note;
*Schultz* v. *State,* Ann. Cas. 1912C, (89 Neb. 34,) 495, and
cases cited in note.) The doctrine of these decisions is
supported by the reasoning of this court in *People* v. *Fal-
kovitch, supra, People* v. *Adams,* 289 Ill. 339, *People* v.
*Kuchta,* 296 id. 180, and *Belk* v. *People,* 125 id. 584.

Counsel for plaintiff in error further insists that the trial
court committed reversible error in giving instruction 40
for the People, which stated in part: "The court instructs
the jury, in the language of the statute, that no person
shall drive a motor vehicle or motor bicycle upon any pub-
lic highway in this State at a speed greater than is reason-
able and proper having regard to the traffic and the use of
the way or so as to endanger the life or limb or injure the
property of any person," then setting out, in substance, a
part of section 22 of the Motor Vehicle law heretofore
recited. It is objected that this instruction was erroneous
because there was no count in the indictment charging that
the deceased was killed upon a public highway, and that
there was no proof in the record that Crawford avenue,
upon which the accident occurred, was a public highway.
The second and third counts of the indictment both re-
ferred to the place where the accident occurred as being on
a street and road. Most, if not all, of the lexicographers
give the word "street" or "road" as a synonym for "high-
way," and in Dillon on Municipal Corporations, (vol. 3,
5th ed.) the author says in section 1121, that "for the
purposes of legal nomenclature, at least, it would seem
that the most generally accepted definitions of a street
simply import that it is a public highway within an in-
corporated municipality." The record shows that Crawford
avenue is a wide street in the city that has in it street car
tracks used by street cars, that both sides are more or less
closely occupied by residences or business places, and that
it is a much traveled roadway. All parties on the trial of
the case appear to have understood that the street was a

public highway, and the trial judge, in ruling as to the validity of the indictment, stated, among other things: "The testimony shows, I believe, that the deceased was struck by an automobile on a public highway in the city of Chicago," and no one then questioned that statement as made by the court, nor does the record show it was questioned at any time. Whether a street or road is a public highway may be proved by parol evidence. (*Woburn* v. *Henshaw,* 101 Mass. 193; Jones on Evidence,—2d ed.—sec. 202; 6 Ency. of Evidence, 468.) There can be no question on this record that Crawford avenue is a public highway, and the instruction in question, in view of this record, was not in any way misleading to the jury and was properly given.

Counsel for plaintiff in error further argues that the trial court erred in permitting evidence to be introduced in support of the fourth count in the indictment, and then, after this evidence was all heard, the count was *nolle prossed* by the State's attorney, the court thereupon striking all the evidence as to the fourth count from the record. This fourth count, as already stated, is based on the city ordinance requiring drivers of vehicles to stop within ten feet of a street car stopped for the purpose of discharging or taking on passengers, and counsel for the plaintiff in error argues earnestly and at length, with the citation of numerous authorities, that the effect of this evidence could not be removed from the minds of the jury after it had once been introduced. It will be noted that the fourth count sets out that the deceased was about to board the street car, while the evidence shows he was alighting from it. We do not deem it necessary to review at length the various questions discussed in the briefs as to whether the abstract, as insisted by counsel for the State, does not show that this evidence was stricken from the record, or that, in any event, the ordinance in question was properly considered by the jury whether the fourth count was *nolle prossed* or not. The reckless driving of the automobile was so clearly

shown to be in plain violation of section 22 of the Motor
Vehicle law that we cannot see how plaintiff in error could
have been injured in any way by the introduction of the
ordinance in question. The affidavits of some of the
jurors, introduced on motion for new trial, to the effect
that they took into consideration the violation of said ordi-
nance in arriving at their verdict, cannot be received to im-
peach the jurors' verdict. *People* v. *Strause,* 290 Ill. 259,
and cases there cited.

Counsel for plaintiff in error says in his brief he was
not introducing these affidavits for the purpose of impeach-
ing the verdict of the jury but rather for the purpose of
showing the court that the jury were influenced by the in-
troduction of the testimony under the fourth count of the
indictment. This argument of counsel seems to be a "dis-
tinction without a difference." The affidavits were intro-
duced for no other purpose than to impeach the verdict and
cannot be considered.

This court has said that errors in the admission of evi-
dence or rulings on the law which are not of a prejudicial
character will not justify a reversal of a judgment of con-
viction, if the jury, acting reasonably on the competent evi-
dence and under proper instructions, could have reached no
other conclusion. (*People* v. *Halpin,* 276 Ill. 363.). We
have also said in *People* v. *Cleminson,* 250 Ill. 135, "that
as we cannot say that upon the competent evidence there
might be a doubt as to defendant's guilt, we would not
be justified in reversing the judgment on account of the
errors committed," with a citation of several decisions of
this State supporting the same conclusion. The evidence
shows clearly in this record that plaintiff in error was driv-
ing his automobile, being practically inexperienced in its
management and control, so recklessly, wantonly and in so
criminal a manner and in such utter disregard of the safety
of others, that no other conclusion could be reached by the
jury than that he was responsible for Bock's death. We

do not think that the errors complained of by counsel on the trial of this case were prejudicial.

The judgment of the criminal court of Cook county will be affirmed.

*Judgment affirmed.*