(No. 13880.—Judgment affirmed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Er-
ror, *vs.* ABE SCHWARTZ, Plaintiff in Error.

*Opinion filed June 22, 1921.*

1. CRIMINAL LAW—*when it is a question for the jury whether
circumstances show criminal negligence in driving an automobile.*
Where a driver of an automobile is charged with manslaughter,
committed by running over a pedestrian, and the defendant admits
that he was running at a greater rate of speed than is declared by
the Motor Vehicle act to be *prima facie* evidence of negligence, it
is a question for the jury whether such a rate of speed, together
with a failure to keep such a lookout as would enable the driver
to see persons crossing the street at the time and place where the
accident occurred, constitutes such a wanton and willful disregard
of the safety of the public as to amount to criminal negligence.

2. SAME—*when jury may consider flight as evidence of guilt.*
In a prosecution of the driver of an automobile who ran over and
killed a pedestrian and did not stop to ascertain the extent of the
injury he had caused, the jury may consider the flight from the
scene as evidence of guilt although the defendant testifies he did
not stop because of race prejudice, as the jury have a right to con-
sider whether the action was controlled by consciousness of guilt
or fear of consequences on account of the alleged prejudice.

3. SAME—*what jury must find before rendering a verdict of
guilty of manslaughter in driving automobile—instruction.* Before

rendering a verdict of guilty of manslaughter against the driver of an automobile who ran over a pedestrian, the jury must believe from the evidence that the defendant knew of the danger of collision and recklessly and negligently or wantonly ran down and collided with the deceased without using such means as were reasonably at his command to prevent such running down or colliding; and an instruction stating such proposition is not subject to the objection that it gives the impression that the merely negligent killing of a person is manslaughter.

4. SAME—*definition of motive.* Motive is an influence which tends to move the will toward some action.

5. SAME—*absence of motive is not a circumstance in favor of innocence in prosecution for involuntary manslaughter.* Involuntary manslaughter occurs without intention or will or motive to commit the crime, and in a prosecution of the driver of an automobile for running over and causing the death of a pedestrian, an instruction stating that the absence of motive to commit the crime is a circumstance in favor of innocence has no application to the case.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding.

O'DONNELL & TOOLEN, and CHARLES P. R. MACAULAY, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, and HENRY T. CHACE, JR., of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

About 9:30 o'clock in the evening of November 30, 1918, Abe Schwartz, who had been a licensed taxicab driver for three years in the city of Chicago, while driving on Ashland avenue a short distance north of Nineteenth street ran his taxicab against two young women who were crossing the street, knocking them down and injuring one of them so badly that she died within three or four hours. Looking back and seeing that an accident had happened he increased his speed and disappeared without further inquiry.

The lamp on one side of his car was broken off by the collision. A police officer picked up the broken glass, put the pieces together and found the number. The defendant was arrested about 3:30 o'clock the same night at the garage of his employer. He was indicted for manslaughter, the various counts charging him with unlawfully, feloniously and willfully assaulting Cecelia Grabinski, running an automobile over her and causing injuries of which she died, with driving the automobile at a dangerous rate of speed, with driving it without watching for persons crossing the street and with failing to sound any signal. He was tried by a jury, found guilty and sentenced to the penitentiary, and he has sued out a writ of error claiming that the verdict was contrary to the evidence and that the court erred in instructing the jury.

There was no substantial conflict in the evidence. The deceased girl was a caller on the evening of the accident at the home of the other girl, Wanda Simbor. This was a house on the east side of Ashland avenue north of Nineteenth street. It was separated from the sidewalk by an iron fence and a gate, which was about seventy-five feet from Nineteenth street. Directly opposite, on the west side of Ashland avenue, was a butcher shop. Wanda's mother asked her to go to the butcher shop, and Cecelia said she would go along. Immediately south of the Simbor house is a church, which is on the corner and faces west on Ashland avenue. Across Nineteenth street, at the southeast corner of Ashland avenue, is another church, and there is an electric light at this corner on a pole. The butcher shop had two plate glass windows, and it was lighted and there was an arc light over the door on the outside. There was no light on the east side of the street near the Simbor house. There are double street car tracks on Ashland avenue. The two girls went out of the house, stopped a moment at the curb, looked south and north, then stepped out on the street and were struck by the taxicab, which was running on the

east rail of the north-bound street car track, as the plaintiff in error testified.  Ashland avenue there is fifty feet wide between curbs, and it is seventeen feet from the east curb line to the east rail.

The plaintiff in error testified that he left Twenty-second street and Ashland avenue to go to a restaurant at Fourteenth and Halsted streets for his supper; that he had two lights at the side and a tail light; that he was going about twenty miles an hour; that he was looking ahead and did not see anybody crossing the street or coming out from the curb north of Nineteenth street, but that some distance north of Nineteenth street he saw "something green like," turned to dodge it and thought his car missed it, and kept going a little on the west rail and then turned back on the east rail.  He looked back to see if he hit something and saw some people running, and figured that if he did hit something, if it was a person, it must have jarred them and they were getting assistance and it was not necessary for him to stop.  The reason he did not stop was because that neighborhood was very bad.  Any person belonging to the Jewish race could not be alive going through there, especially in a predicament like that.  He testified that he did not realize that anything had happened, did not hear any cracking of glass or breaking.  His car, he said, was governed to twenty-two miles an hour, and he did not have it all the way down.  Other witnesses testified to estimates of the speed of twenty-five to thirty and thirty-five to forty miles an hour.  No signal of any kind was given.

It is clear that upon this record it was a question of fact for the jury to determine whether the defendant was guilty of that wanton and willful disregard of the safety of the public which amounts to criminal negligence.  The Motor Vehicle act declares a greater rate of speed than fifteen miles an hour in a residence district *prima facie* evidence of negligence.  The plaintiff in error himself estimates his speed at twenty miles an hour.  This is thirty

feet a second, and it was a question for the jury whether such a rate of speed, together with a failure to keep such a lookout as would enable the driver to see persons crossing the street lighted as was this street, was under all the circumstances criminal. Flight from the scene is evidence of guilt, and the jury had the right to consider whether the plaintiff in error's action was controlled by consciousness of guilt or fear of consequences on account of unreasoning race prejudice.

Complaint is made of the following instruction:

"Every person who drives upon the public highway is under a legal duty to observe in the control and management of his vehicle the exercise of reasonable care to prevent injury to others. Every person is criminally responsible for the willful and wanton neglect or willful and wanton failure to perform that duty. If you believe from the evidence that the defendant in this case was driving an automobile at the time and place in question and that at that time and place the defendant knew of the danger of the alleged collision with the deceased or other person and the probable consequences which would flow therefrom, and if you further believe from the evidence that the defendant did then and there recklessly and negligently or wantonly run down and collide with the deceased without using such means as you believe from the evidence were reasonably at his command to prevent such running down or collision, then the defendant should be held penally responsible for the result of his negligence or willful omission of duty if you find from the evidence that he was so negligent or did willfully omit his said duty. The fact that the deceased herself at the time of the killing, if such was the fact, was herself guilty of negligence, or want of care for her own safety, would not of itself exculpate the defendant in this case, if he himself was guilty of criminal negligence as explained in these instructions and as charged in the indictment."

The objection made to this instruction is, that the impression given is that the merely negligent killing of a person is manslaughter though such negligence is not wanton or willful, contrary to the doctrine announced in *People* v. *Adams,* 289 Ill. 339. The instruction is not subject to this criticism. It is based upon the words at the end of the next to the last sentence, "if you find from the evidence that he was so negligent or did willfully omit his said duty." These words might better have been omitted from the instruction. They are mere surplusage and repetition and only make the instruction more cumbersome though not more difficult of comprehension. What the jury must believe from the evidence before a verdict of guilty can be rendered is stated in the first part of this same sentence, and that is, that the defendant in driving his automobile knew of the danger of collision and recklessly and negligently or wantonly did run down and collide with the deceased without using such means as were reasonably at his command to prevent such running down or collision. It is only if the jury believe these things from the evidence that they can hold the defendant penally responsible, and the last clause neither adds to nor detracts from the principle stated. The whole instruction must be read together, and the last sentence limits the criminal negligence to that charged in the indictment. The objection to the words "in this case," used in this sentence, is without merit. The instruction is intended to apply to the particular case. No other case was mentioned, and the reference to the defendant in the case as the defendant "in this case" could by no possibility have prejudiced him.

The plaintiff in error asked the following instruction:

"The court instructs the jury that when the evidence fails to show any motive to commit the crime charged, on the part of the accused, this is a circumstance in favor of his innocence. And in this case, if the jury find, upon careful examination of all the evidence, that it fails to show

any motive, on the part of the accused, Abe Schwartz, to commit the crime charged against him, then this is a circumstance which the jury ought to consider in connection with all the other evidence in the case in making up their verdict."

The court gave the instruction with the following addition: "But it is not necessary, to convict the defendant in this case, that it be proven there was any motive at the time in the defendant's mind to kill or injure the deceased, Cecelia Grabinski."

The instruction as asked had no application to the case. The charge was manslaughter, and there was not the slightest evidence of voluntary manslaughter as defined by the statute,—that is, upon a sudden heat of passion, caused by a provocation apparently sufficient to make the passion irresistible. In involuntary manslaughter there is necessarily an absence of intention to cause death. An intention to commit involuntary manslaughter is a contradiction in terms. Motive is an influence which tends to move the will toward some action. Involuntary manslaughter occurs without intention or will or motive to commit the crime. Therefore it is not true that absence of motive to commit a crime of which absence of intention or motive is characteristic is a circumstance in favor of the innocence of the accused. The instruction should have been refused. The modification did not prejudice the plaintiff in error.

It is also claimed that the Parole law, under which the plaintiff in error was sentenced, violates the fourteenth amendment to the Federal constitution. We have decided to the contrary in *People* v. *Doras,* 290 Ill. 188, and in many other cases.

The judgment will be affirmed.    *Judgment affirmed.*