(No. 22956 ▮▮▮▮▮▮▮▮)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HERSCHEL A. HERKLESS, Plaintiff in Error.

*Opinion filed June 14, 1935.*

HAL M. STONE, and BRANSON WRIGHT, for plaintiff in error.

Otto Kerner, Attorney General, Jesse R. Willis, State's Attorney, J. J. Neiger, and Clifford N. Coolidge, for the People.

Mr. Justice Orr delivered the opinion of the court:

Herschel Herkless was indicted, tried and found guilty by a jury in the circuit court of McLean county for the involuntary manslaughter of Otto Gerber with a motor vehicle. After denial of motions for a new trial and in arrest of judgment he was sentenced to the penitentiary for an indeterminate period of from one to fourteen years. He has brought the case here for review by writ of error.

Gerber, with two other boys, Clark Bozarth and Lawrence Kaufman, started out on their bicycles to a Sunday picnic about noon on October 15, 1933. They rode north on a gravel road until they reached its intersection with the paved highway known as State route 122, about eight or nine miles west of Bloomington. Bozarth and Kaufman stopped at the intersection while the former removed his coat and fastened it on the handlebars of his bicycle. Gerber did not wait for his companions and headed east on Route 122. As Bozarth and Kaufman rode onto the paved highway they saw an automobile drawing near them from the west. The three boys were riding east on the south side of the pavement, Gerber being close to its south edge. The automobile which Bozarth and Kaufman had seen, passed them from their rear on the north side of the road after they had proceeded a short distance. Neither heard its horn sounded or was able to judge its speed. After passing them it gradually angled over to the south side of the road and struck Gerber. As the result of the impact both Gerber and his bicycle were thrown in the air and fell three or four feet from the south edge of the pavement. The automobile did not stop, but after the collision its speed was accelerated as it continued east and disappeared. Bozarth and Kaufman signaled C. E. Craig, who

was approaching from the east. Gerber was placed in the latter's automobile and taken to a hospital in Bloomington. He died three days later.

At the point where the collision occured the paved highway is eighteen feet wide, with dirt shoulders on each side about eight feet in width. There were no other automobiles coming in either direction at the time Gerber was struck. The sun was shining brightly, there was no wind, the atmosphere was clear and the pavement was dry. After the collision glass was found scattered two hundred feet east from the place of the impact. The lens of an automobile head-lamp and a head-light rim were found more than two hundred feet from the scene of the collision.

C. E. Craig, a railroad engineer, testified that he saw the automobile driven by defendant about one-quarter or three-eighths of a mile from the place where it struck Gerber; that the windshield was completely broken and that the right head-lamp had been knocked out. According to Craig, when defendant's car passed him it was going seventy miles or more an hour. He added that he found Gerber unconscious, noted a wound in the back of his skull, that his face and eyes were covered with dirt and that his mouth was open and full of dirt. Elva Craig also identified defendant as the driver of the automobile she and her husband met about a quarter of a mile before they reached the point where Gerber lay. She testified that the windshield of defendant's car was broken and that the car was swerving from one side of the road to the other.

Floyd Adams, a deputy sheriff, arrested defendant, a hardware merchant, at his place of business in Bloomington on October 17, 1933, and on the same day he and two other officers examined defendant's automobile. He observed that there was no lens in the right head-lamp; that the windshield was broken and that the hub-cap on the. right front wheel was damaged. He testified that as he was taking defendant before the police magistrate he asked

him what he meant by leaving the scene of the accident, and that defendant answered, "I don't know, unless I just lost my head entirely."

A. L. VonSar, superintendent of the bureau of identification of McLean county, identified the bicycle and the hub-cap which had been on the right front wheel of defendant's automobile and they were introduced in evidence. The rear wheel of the bicycle appears to have been struck, as the hub-cap bears a deep indentation which corresponds with the threads of the bolt in the rear axle of the bicycle. After the collision the bicycle seat was loose, the rear fender was battered and bent and the left pedal was missing.

Howard P. Sloan, the attending physician, testified that upon his examination of Gerber he found, among other injuries, a basal skull fracture and two scalp wounds. On cross-examination counsel for the defendant endeavored to show by this witness that the shock of the injuries suffered by Gerber might have been seriously increased by the manner in which he was handled after the collision. The doctor testified, however, that Gerber recovered from the shock on the day following the collision and that the proximate cause of his death was the skull fracture.

Defendant did not testify and introduced no testimony contradicting the above mentioned evidence for the People. Eight witnesses testified as to his good reputation as a law-abiding citizen. Elmer E. Fenn, who had been engaged in the bicycle business for nearly forty years, testified that there was a broken pedal-shaft on the left side of the bicycle. J. W. Phelps, engaged in the same business, examined the pedal-shaft. According to this witness it showed two separate breaks and two different shades of steel. Charles K. Woodin, a mechanical engineer, testified that he had examined the bicycle, and, in particular, the left pedal-stub. He expressed the opinion that on the day of the collision the metal in it was slightly defective. He was then interrogated as to whether it was so defective that it would be

likely to break under normal use, assuming that it was ridden by a person weighing 175 to 180 pounds. He replied that it could be broken under normal usage.

The trial court committed no error in denying defendant's motion to quash the indictment, based on an alleged violation of statutory procedure for selecting grand jurors. From the evidence at the hearing on this motion it appears that the judiciary committee of the board of supervisors selected twenty-three persons to serve as grand jurors at the February term, 1934, of the circuit court; that on December 5, 1933, the committee reported the names of these persons at the regular meeting of the whole board; that the name and residence of each person on the list was read, and that on the same day the board of supervisors voted to adopt the list of names submitted. Defendant contends that the judiciary committee actually selected the grand jury which returned the indictment against him; that the board of supervisors exercised no discretion in making the selection, and that it lacked authority to delegate the selection of the grand jury to its judiciary committee. It is manifest that although the judiciary committee prepared a list of prospective jurors, its recommendations were of no effect until final action was taken by the whole board. The selection of the grand jury was thus made by the board of supervisors when it voted upon the names submitted and not when a special committee made up the proposed list. Such action as was taken by the judiciary committee was ratified and confirmed by the board when it approved the list of names, thereby making it the selection of the board itself. There is a complete absence of evidence to show that any substantial right of the defendant was in any manner impaired because of the preliminary selection of grand jurors by the judiciary committee. Likewise there was no showing of any improper influence, undue prejudice or fraud of any kind in the selection of the grand jury or in their proceedings. *People* v. *Lieber*, 357 Ill. 423.

It is urged that the motion to quash should have been granted because the fifth and seventh counts of the indictment contain allegations in the language of the portion of section 40 of the Motor Vehicle law (Cahill's Stat. 1933, p. 1895; Smith's Stat. 1933, p. 2518;) which provides, among other things, that upon approaching a person *walking* upon or along a public highway the operator of a motor vehicle shall give reasonable warning of his approach and use every reasonable precaution to avoid injuring such person, and, if necessary, to stop his motor vehicle until he can safely proceed. Defendant maintains that the only legal duties resting upon the driver of an automobile are those expressly imposed by statute, and that the duties mentioned in counts 5 and 7 are not imposed upon the operator of an automobile upon approaching a person riding a bicycle. The gist of the offense of involuntary manslaughter with a motor vehicle is criminal negligence. (*People* v. *Schneider,* 360 Ill. 43; *People* v. *Sikes,* 328 id. 64.) Negligence, to become criminal, must be reckless or wanton and of such a character as to show an utter disregard for the safety of others under circumstances likely to cause injury. (*People* v. *Camberis,* 297 Ill. 455; *People* v. *Adams,* 289 id. 339; *People* v. *Falkovitch,* 280 id. 321.) Every person who drives upon a public highway is under a legal duty to observe, in the control and management of his vehicle, the exercise of reasonable care to prevent injury to others. (*People* v. *Schwartz,* 298 Ill. 218; *People* v. *Adams, supra; People* v. *Falkovitch, supra; Belk* v. *People,* 125 Ill. 584.) Where a person with willful and wanton negligence drives his automobile in a reckless manner, in utter disregard of the safety of others, and runs over and kills another, even though unintentionally, his action constitutes manslaughter. (*People* v. *Sikes, supra; People* v. *Camberis, supra.*) The charge in the present case is criminal negligence resulting in the death of Gerber, and not the violation of a provision of the Motor Vehicle law. In

such case, whether defendant is guilty of culpable or criminal negligence which was the proximate cause of the resultant death is a question of fact for the jury to pass upon under correct instructions. *People* v. *Smaszcz*, 344 Ill. 494; *People* v. *Adams, supra; People* v. *Falkovitch, supra.*

Errors in the admission and rejection of testimony are charged. In particular, it is urged that the testimony of Craig concerning the speed of defendant's automobile was improper, as no witness testified to its speed at the time of the accident. It is argued that the effect of this testimony was to create an inference that defendant was driving at a terrific speed immediately preceding the collision. Counsel for defendant consented to the admission of this testimony, although it was not specifically shown that the car was traveling at the same rate of speed when it struck Gerber. Even had an objection been interposed, evidence of the speed of defendant's car at such a short distance from the scene was competent to show flight. Defendant's flight from the scene of the collision without any effort to ascertain the extent of the injuries caused by his act or to aid the injured person may be taken into consideration as evidence of guilt. *People* v. *Smaszcz, supra; People* v. *Schwartz, supra.*

Defendant further argues that the court erred in permitting his counsel to stipulate that Craig's testimony should be admitted, and that the trial judge should have stricken the testimony of his own motion. To sustain this argument, reliance is placed on certain language used in *People* v. *Blevins*, 251 Ill. 381, a case in which the defendant was represented by counsel appointed by the court. In the case cited there was an adequate showing as to the inexperience and incompetency of counsel. In the present case it appears that one of the attorneys for defendant in this court represented him at the first trial and withdrew after the motion for a new trial was allowed. Thereafter the trial court appointed two attorneys to represent defend-

ant at the second trial, for which, so far as the record discloses, there was ample time to prepare. Although there is no evidence as to the experience of these attorneys in criminal trials, it appears that they conducted the defense in an able manner. The record shows that repeated objections were made to questions and to the conduct of the State's attorney, particularly to portions of his closing argument. At no time prior to judgment did defendant express dissatisfaction or request that other counsel be appointed to represent him. Under these or similar circumstances a judgment of conviction will not be reversed on the ground of incompetent and inexperienced counsel. *People* v. *Francis,* 356 Ill. 74; *People* v. *Laures,* 289 id. 490.

It is claimed that the testimony of Adams and VonSar as to their conversations with defendant were immaterial and prejudicial to defendant. It is argued that the conversation related by Adams did not pertain to the collision which caused Gerber's death, and that, even if the statements had been connected with the particular collision, they would have tended only to show the commission of a separate and distinct offense, namely, "leaving the scene of the accident." No evidence is to be found as to the death of any person other than Otto Gerber or any accident or collision other than the one which resulted in his death. The claim that the jury might have been led to believe that defendant was involved in another accident is altogether without merit. The evidence shows that VonSar's conversation with defendant occurred two days after the collision. As the statements of defendant to these two witnesses were only acknowledgments of facts tending to establish guilt and were not in the nature of a confession they were competent and properly admissible. *People* v. *Kircher,* 309 Ill. 500; *People* v. *Fionda,* 286 id. 19.

Objection is made that the trial court erred in excluding expert testimony tending to show that the left pedal of Gerber's bicycle was so defective that it would break

in normal use and had been partly broken prior to the collision. From the evidence it appears that both pedals were on the bicycle as Gerber headed east on Route 122. After the collision the left pedal was missing. Defendant offered to show by Fenn, one of the expert witnesses, that there was likelihood of a breakage of the pedal owing to the manner in which such pedals were manufactured, and also that such breakage occurred more often on the left than on the right-hand side of a bicycle. The trial court properly limited his testimony to the specific exhibit. The witness Phelps was asked if he had an opinion, based upon his experience in repairing bicycles, as to whether the metal in the pedal-stub was so defective that it would be likely to break under normal use. An objection to this hypothetical question was properly sustained as it was not based on the facts. Charles K. Woodin testified that the particular piece of metal, namely, the pedal-stub, was slightly defective. This witness was asked for an opinion whether it could be broken under normal usage. No error is perceived in the rejection of the opinion testimony of the three witnesses named, especially since defendant was permitted to prove that the broken pedal-stub was defective. There was no evidence that the left pedal was missing or broken before it was struck by defendant's automobile. Obviously, the pedal was broken off by the impact of the car with the bicycle.

It is insisted that the State's attorney in his closing argument to the jury made prejudicial remarks not based on the evidence, for the purpose of inflaming the minds of the jurors against defendant. The State's attorney said: "This boy got over a foot and a half from the edge of the road, and yet he had to run into this boy and throw this boy and the bicycle up into the windshield of that automobile." Kaufman, one of Gerber's companions, testified that both Gerber and the bicycle were thrown into the air by the impact of the collision. The evidence further

showed that the windshield of the car was broken. The irresistible inference is that it was broken by the collision with Gerber and his bicycle. Complaint is also made of the following remark by the State's attorney: "And the glass broke out of the windshield, and there was the boy lying over the edge of the pavement, with a gash in his head, a skull fracture, his mouth filled with dirt and his eyes filled with dirt." Kaufman testified that immediately after Gerber was struck he observed a large gash in Gerber's head and that his face seemed to be dusty and dirty. Craig corroborated Kaufman's testimony as to the wound in the back of the skull, and added: "His face was all covered with dirt, and his face and eyes; his mouth was wide open and full of dirt." It is a refined distinction to say that Gerber's eyes were covered, but not filled, with dirt. Whatever is proved by direct evidence or is fairly inferable from facts and circumstances proved and has a bearing on the issue may be a fair subject for comment by counsel during the closing argument. (*People* v. *Blume,* 345 Ill. 524; *People* v. *Beil,* 322 id. 434; *People* v. *Dear,* 286 id. 142.) The statements of the State's attorney were legitimate inferences from the facts proved and were within the rule of proper argument.

We will not lengthen this opinion by a detailed discussion of the different instructions given or refused wherein error is now claimed. The eighth and ninth instructions given for the People on the subject of involuntary manslaughter correctly stated the law applicable to this case. (*People* v. *Flanagan,* 338 Ill. 353; *People* v. *Schwartz, supra; People* v. *Falkovitch, supra.*) Refused instructions 3, 4 and 6 were fully covered by others given. Repetition was unnecessary, and there was no error in refusing these instructions. (*People* v. *Gasior,* 359 Ill. 517; *People* v. *Buzan,* 351 id. 610.) Defendant's fifth refused instruction was not a correct statement of the law, as it was immaterial whether any subsequent cause contributed to

Gerber's death if the jury believed that defendant was guilty of criminal negligence and that such negligence was the proximate cause of Gerber's death.

The objection that the sentence of the court was indefinite because it mentioned neither the crime for which defendant was convicted nor the institution to which he was to be sent is without merit. It is conceded that the clerk's record is in proper form. The jury found defendant guilty of manslaughter as charged in the indictment, the verdict so stated, and the trial judge pronounced sentence upon the verdict. Even though the phraseology employed was not concise, defendant was fully informed that he was being sentenced to incarceration in the penitentiary for an indeterminate period of from one to fourteen years and that his own conduct would have much to do with the actual time he might be required to serve. The sentence was to the penitentiary generally, and the commission of the custody of defendant to the Department of Public Welfare for assignment to the particular division of the penitentiary system was in accordance with section 3 of the act in relation to the Illinois State Penitentiary, approved June 30, 1933. Cahill's Stat. 1933, p. 2138; Smith's Stat. 1933, p. 2147; *People* v. *Mikula,* 357 Ill. 481.

There is ample evidence in the record to warrant a conviction, and it cannot be said that the verdict is palpably contrary to the weight of the evidence. Under these circumstances, and where errors of law have not occurred which would warrant a reversal, this court will not substitute its judgment for that of the jury. *People* v. *Wallage,* 353 Ill. 95; *People* v. *Flanagan, supra.*

The judgment is affirmed.    *Judgment affirmed.*