(No. 26234.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK HANSEN, Plaintiff in Error.

*Opinion filed Nov. 18, 1941—Rehearing denied January 14, 1942.*

ROMAN E. POSANSKI, THADDEUS C. TOUDOR, and IRVING L. LANSING, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, (EDWARD E. WILSON, JOHN T. GALLAGHER, and MELVIN S. REMBE, of counsel,) for the People.

Mr. CHIEF JUSTICE MURPHY delivered the opinion of the court:

On a trial before the criminal court of Cook county a jury found plaintiff in error, Frank Hansen, guilty of manslaughter. Motions for a new trial and in arrest of judgment were overruled and he was sentenced to the penitentiary for the statutory indeterminate term. He seeks a reversal by writ of error.

The charge arose out of the alleged unlawful killing of William J. Knapp, whose death was caused by injuries received when an automobile driven by him and one driven

by plaintiff in error collided at the intersection of Ninety-fifth and Halsted streets in Chicago. As grounds for reversal it is contended the evidence does not show beyond a reasonable doubt that plaintiff in error was guilty of criminal negligence, and that there was reversible error in the admission of evidence and in the giving and refusing of instructions.

The accident occurred about 6:00 A.M. February 21, 1940. Halsted street extends north and south, and Ninety-fifth street east and west. At the intersection Halsted street is 71 feet 8 inches wide with a parkway in the center of 17 feet 8 inches, leaving a driveway on either side of 27 feet. The east and west street is 77 feet wide with a 16-foot parkway and a driveway on either side of 30½ feet. Stop and go signal lights were in operation on each of the four corners of the intersection, adjusted to alternate the movement of the traffic on the two streets.

Plaintiff in error was an employee of the village of Hazel Crest working in its water department. At times he did special police work for the village and on the night in question was so engaged. He was driving the police car, cruising about the streets of the village, when about 1:00 A.M. he found two automobiles in a ditch. Evan Flora was riding in the police car with him and he assisted plaintiff in error and others in pulling the automobiles from the ditch and in towing them to a garage. One of the automobiles was driven by George Herbst and riding with him were Peter Westra, Gertrude Nord and Aileen Ketola. After the Herbst automobile was repaired plaintiff in error, Flora, and the four persons in the Herbst car went to a nearby tavern. Plaintiff in error was driving the police car. There is no evidence that plaintiff in error had any intoxicating liquor that night before going to this tavern. The witnesses do not agree as to what he drank at the tavern. Herbst testified he had one drink of whisky, Westra stated

he had a drink of beer. Mrs. Nord did not remember seeing plaintiff in error drink anything at the tavern. Miss Ketola testified that she did not remember seeing him at the tavern and that she could not remember anything that occurred after 3:30 that morning. Joseph Sorak, an employee of the tavern who waited on the party, testified he served plaintiff in error three drinks of whisky each accompanied with a beer wash. When they left the tavern plaintiff in error was driving the police car and Westra, Flora and Miss Ketola were in the car with him. Herbst and Mrs. Nord left in the other car. Plaintiff in error and the ones in his automobile drove to a tavern located near Calumet Park. Westra stated they ordered beer at this tavern. Plaintiff in error denied drinking any intoxicating liquor at either of said taverns. When plaintiff in error left the last tavern Miss Ketola and Westra were in the front seat with him and Flora was in the rear seat. Plaintiff in error received injuries in the accident rendering him unconscious and he was taken to a hospital for treatment. The doctor who cared for him and others who were near him at the hospital testified they did not detect the odor of intoxicating liquor on his breath. Plaintiff in error offered the evidence of several witnesses to prove that prior to the accident he had a good reputation for sobriety.

The police car driven by plaintiff in error is described as a 1937 Ford V-8 with the muffler "blown." Deceased was driving a Ford coupe. He approached the intersection of the two streets from the east.

There were three eyewitnesses who testified on the trial. Fred Gulker, who was waiting on the northwest corner of the intersection for a bus, testified that he heard the noise of a motor coming on Halsted street from the south toward the intersection, that he observed the automobile deceased was driving standing near the lights on the east side of the intersection. As the lights changed, flashing the green light for the traffic from Ninety-fifth street, the deceased started

his automobile and drove into the intersection. He said that plaintiff in error's automobile was 200 feet south of the intersection when the lights changed. The deceased's automobile had advanced about 20 feet into the intersection when it was struck by plaintiff in error's car. In his opinion plaintiff in error's speed was 70 to 90 miles per hour and he stated that the speed was not slackened before entering the intersection.

Francis Borst, driving a truck west on Ninety-fifth street, testified that the car driven by the deceased passed him a half block east of the intersection, that it came to a stop at the east side of the intersection, the light being against it, and when the light changed to green deceased's automobile moved forward into the intersection at a rate of four or five miles per hour where it was struck by plaintiff in error's automobile. He saw plaintiff in error approaching the intersection and in his opinion he was traveling at a speed of 50 to 60 miles per hour.

Raymond Brink, attendant at a service station located on the southeast corner of the intersection, testified he was in the service station looking out the window and saw plaintiff in error's automobile approaching the intersection and that in his opinion it was going 60 to 65 miles per hour. He said the light signal was against the traffic on Halsted street when plaintiff in error entered the intersection.

Peter Westra testified that as they were riding north on Halsted street and while they were some distance south of the intersection he said to plaintiff in error "no hurry, why don't you take it a little easier?" and that plaintiff in error made no reply. He further testified that he was acquainted with the street and its surroundings and when they were near the intersection the signal light was red and that he did not remember any subsequent events. As has been stated, Miss Ketola did not remember anything that occurred after 3:30 A.M. Flora died previous to the trial.

Plaintiff in error's version is that he was driving 45 miles per hour, that as he approached the intersection the light changed to green and remained so until after he entered the intersection; that when he was about half way in the intersection the other car came in from the east, that he applied his brakes but could not avoid the collision.

The evidence of police officers and eyewitnesses shows that the automobile driven by the deceased came to a stop north of the north curb line of Ninety-fifth street at a point about 75 feet from the point of contact. Plaintiff in error's car was about 45 feet north of the same curb line.

In presenting the contention that the evidence does not show criminal negligence, plaintiff in error says the evidence of eyewitnesses Gulker, Borst and Brink is not worthy of belief. In support of such contention he says there is such discrepancy between the evidence of each of the witnesses given on the trial and that which they gave at a coroner's inquest that it makes their entire evidence unworthy of belief. Without detailing the alleged discrepancies it is sufficient to say that the greater part of the inconsistencies in the evidence arises from the comparison of a single answer made at the inquest with the evidence of the witness on the trial, thereby omitting all reference to other related parts of the witness' evidence given at the inquest. When answers of the witness to other questions propounded at the inquest are considered, it clearly shows that the discrepancies urged are not of such character that the court can say the entire evidence of such witness should be rejected. The discrepancies pointed out went to the weight to be attached to the evidence of such witness. That was a question for the jury. It is also claimed Brink's evidence is incredible for the reason it was proved that one standing in the position Brink said he was when he observed plaintiff in error's car going north on Halsted street could not see the things that he testified he observed. Under the

circumstances shown these matters were questions for the jury.

The gist of the offense of involuntary manslaughter with a motor vehicle is criminal negligence. (*People* v. *Schneider,* 360 Ill. 43; *People* v. *Herkless,* 361 id. 32.) In *People* v. *Camberis,* 297 Ill. 455, *People* v. *Adams,* 289 id. 339, and other cases, the rule was stated to be that negligence to become criminal must be reckless or wanton and of such a character as to show an utter disregard for the safety of others under circumstances likely to cause injury. Where a person drives his automobile in a manner that shows wanton negligence and an utter disregard for the safety of others and in so doing runs over and kills another, even though unintentionally, his action constitutes manslaughter. (*People* v. *Schwartz,* 298 Ill. 218; *People* v. *Herkless, supra; People* v. *Camberis, supra.*) If the evidence of the eyewitnesses who testified on behalf of the People is to be given credence, then plaintiff in error's conduct in the driving of his automobile constituted criminal negligence. The location and condition of the two automobiles immediately after the accident strongly corroborates these witnesses as to the speed plaintiff in error was driving. Under the facts shown, the credit and weight to be attached to the evidence of the respective witnesses was a question for the jury. It was for the jury to determine whether, under the facts shown, plaintiff in error was guilty of culpable or criminal negligence which was the proximate cause of the death of William J. Knapp. *People* v. *Smaszcz,* 344 Ill. 494; *People* v. *Adams, supra.*

It is claimed there was error in the admission of evidence relating to the injuries Aileen Ketola received in the accident. Miss Ketola was called on behalf of the People and testified she did not remember anything that occurred after 3:30 A.M. at which time they were at the first tavern. On the theory that her lapse of memory

should be explained, the assistant State's attorney showed that she received a skull fracture, a fracture of the pelvis and hip bones and as a result of such injuries was in the hospital for six weeks. Under the circumstances of this case such evidence was not material to the issues and was not admissible for the purpose offered.

In *People* v. *Jeffers,* 372 Ill. 590, a manslaughter case based upon criminal negligence in the driving of an automobile, the admission of evidence as to injuries sustained by persons other than the deceased was held proper under the facts of that case. The facts in the two cases are readily distinguishable.

The effect of the admission of Miss Ketola's evidence was to bring before the jury the extent of her injuries, for the evidence of the eyewitnesses and the police officers who arrived at the scene of the accident immediately after the collision shows conclusively she had suffered injuries and was lying prostrate on the pavement near one of the wrecked automobiles. There is no claim this evidence was not proper. The fact that Miss Ketola received injuries in the collision having been shown by unchallenged evidence, we can not say that the introduction of her evidence showing the extent and location of such injuries could have prejudiced the jury against plaintiff in error as he now claims.

In accounting for the absence of Evan Flora as a witness the People called Louis L. Flora to prove his death. He testified that he was dead; that he was alive on the evening of February 20, 1940, and the early morning of February 21. Objection was interposed to but one question, and that on the ground it was immaterial. Plaintiff in error now contends such method of examination was adopted to bring before the jury the fact that Flora was killed in the accident. The method of examination pursued is subject to the criticism made but other evidence which

is not questioned shows Flora was severely injured in the accident. A police officer testified that immediately after the collision Flora's head and most of his body were out of the police car, his feet were lying on the running board. The inference arising from the questioned evidence that Flora was killed in the accident could not, in view of the other evidence, prejudice the jury against plaintiff in error. By competent evidence, or evidence that was not objected to, it appears that every occupant of plaintiff in error's car suffered severe injuries. Plaintiff in error said he received injuries, that he was taken to the hospital and did not regain consciousness for two or three days. The method of examination of the witness Flora, while not approved, can not under the circumstances of this case be said to be reversible error.

Over the objection of plaintiff in error the People offered in evidence an ordinance of the city of Chicago which declared it to be unlawful to operate any motor vehicle on any street or public way of the city at a speed greater than was reasonable and proper having regard to the traffic and use of the way or so as to endanger life or limb or property of any person, and that speeds in excess of those specified in the ordinance would be *prima facie* evidence that the motor vehicle was running at a speed greater than was reasonable and proper and so as to endanger life or limb or the property of any person. At the conclusion of the evidence, and during the opening argument on behalf of the People, the court announced it had reversed its former ruling and sustained plaintiff in error's objections to the introduction of the ordinance and said that the ordinance is not to be considered by the jury. Instruction No. 1 also told the jury that if they had heard any evidence which the court ordered stricken, they should wholly disregard the same. Without passing upon the correctness of the court's ruling in admitting the ordinance

in the first instance, it is clear that its later rejection followed by the instructions corrected any error previously made.

Instruction No. 7 told the jury that if after comparison and consideration of all the evidence they had an abiding conviction and were morally certain that the guilt of the plaintiff in error had been proved beyond a reasonable doubt and to a moral certainty, then it was their duty to find the plaintiff in error guilty. It is argued the instruction was faulty because it assumed the guilt of plaintiff in error had been proved. The contention is without merit. The question of guilt of the plaintiff in error was left to the jury to be determined from a comparison and consideration of all the evidence in the case.

Complaint is made of instruction No. 15. It defines criminal negligence and does not, as plaintiff in error claims, tell the jury that any act of negligence constitutes criminal negligence. It does not direct a verdict. It is a copy of a part of the opinion in *People* v. *Sikes,* 328 Ill. 64, on page 74, where this court defined gross and wanton negligence and distinguished such negligence from ordinary negligence. The instruction also defines criminal negligence. The instruction stated rules of law in accord with the *Sikes case* and was applicable to the facts in this case.

Plaintiff in error complains of instruction No. 17. It defines the crime of manslaughter in the language of the statute, except that it uses the word involuntary in referring to voluntary manslaughter. The jury could not have been misled by the use of the wrong word.

Instruction No. 9 was in reference to the evidence of the previous good reputation of plaintiff in error. It told the jury it was a circumstance to be considered with the other evidence in the case. Complaint is made that it should have told the jury to consider such evidence with all the other evidence in the case. The objection is without merit.

Plaintiff in error's final contention is that the court erred in refusing certain instructions tendered by him. Instructions Nos. 2, 5, 8, 9 and 12 were cautionary instructions the substance of which was covered by given instructions. Refused instruction No. 16 stated a correct rule of law as to what constitutes criminal negligence but the same principle of law was included in given instruction No. 15 previously discussed and approved.

The evidence supports the verdict of the jury and there was no error of law that justifies a reversal of the judgment. For the reasons assigned, the judgment of the criminal court is affirmed. *Judgment affirmed.*